93 So.2d 400

### STATE of Alabama

v.

### NEWBURY MANUFACTURING CO., Inc.

7 Div. 333.

Supreme Court of Alabama.

March 7, 1957.

Dixon, Wooten & Boyett, Talladega, for appellee.

John Patterson, Atty. Gen., Willard W. Livingston and Jas. R. Payne, Asst. Attys. Gen., for appellant.

PER CURIAM.

This is an appeal by the State from a decree rendered by the Talladega Circuit Court, in Equity, on an appeal to it by a taxpayer from a use tax assessment of "sand" and "steel shot," purchased and used by the taxpayer in and about the manufacture of cast iron pipe fittings. The trial court held that the purchase and use of such material were exempt as being parts of a machine used in manufacturing tangible personal property.

The applicable provisions of the statute are: section 787(d and e), Title 51, and

section 789(p), as amended, Title 51. Section 787(d) describes a "wholesale sale" (which is not subject to the tax here involved), so far as here material, as one which "shall include a sale of tangible personal property or products * * * to a manufacturer or compounder which enters into and becomes an ingredient or component part of the tangible personal property or products which he manufactures or compounds for sale". Section 787(e) defines retail sales (which are subject to the tax here imposed) as including "sales of tangible personal property or products to manufacturers, quarry operators, mine operators or compounders, which are used or consumed by them in manufacturing, mining, quarrying or compounding and do not become an ingredient or component part of the tangible personal property manufactured or compounded". Section 789(p) as amended exempts from the tax the sale of "machines used in mining, quarrying, compounding, processing, and manufacturing of tangible personal property" including "machinery which is used for mining, quarrying, compounding, processing, or manufacturing tangible personal property, and the parts of such machines, attachments and replacements therefor, which are made or manufactured for use on or in the operation of such machines and which are necessary to the operation of such machines and are customarily so used".

The "sand" and "steel shot" here in question were not purchased at "wholesale" as here defined, for they do not become an ingredient or component part of tangible personal property or products which the taxpayer manufactures or compounds. Section 787(d), supra. So that their purchase would be taxable under section 787 (e), supra, unless they are exempt under section 789(p) as amended, supra, as being parts of machines or machinery used by the taxpayer in manufacturing or compounding tangible personal property. Since the sales of "sand" and "steel shot" are taxable unless they are exempt, the taxpayer has the burden of a strict construction against him.

It now becomes necessary to analyze the purpose for which the "sand" and "steel shot" are used in the process of manufacturing cast iron pipe fittings.

The evidence given by the president of the taxpayer in that respect is without conflict. We shall first refer to the "sand". Counsel are in accord that it is necessary to be used in the manufacturing process by the taxpayer. It must have distinctive qualities to be useful. This includes the size and content of the grain; and it must be analyzed to that end. The best sort comes from Arkansas. It appears that perfect qualities are not found in just any sand attainable. It has to be carefully inspected and filtered. It is primarily used in the process of making cores necessary in the taxpayer's operation. The sand is put "into a core blowing machine operated with compressed air" and blown into a metallic core box, taking the shape of the core which forms the inside contour or cavity of the casting, and is then withdrawn from the core machine, when packed to proper hardness and placed on a tray, then it is put into a rack which is heated to 450° for thirty-five or forty minutes. During the drying process it has developed a strength sufficient to withstand the action of molten iron hitting it. The core of sand is then put into a mold, and the molten iron is poured down with the core forming the inside contour of the casting. As the molten iron casts and sets up, it becomes solid. The sand cores are by then broken down and have lost their strength. The "shakedown" vibrates and causes the sand to drop into the filter and it goes back into storage. It is reused as molding sand after it is stored in the hopper of fifty ton capacity. It is poured from the hopper through a gate into the mullers to prepare for molding. To it there is added certain chemicals and wood flour. That mixture is the molding sand, and this is dumped through a gate into the molding machine and is ready for use. The witness exhibited appliances used and explained how they are used and exactly the use of sand in pro-

ducing the molding form. Sand is the only material that comes in contact with the molten iron.

The cast iron fittings, after they are made, have to be cleaned of excess sand. This is done by a cleaning system in which a wheelabrator is used. The steel shot are placed in it, and it is then turned three or four thousand revolutions per minute. Thereby the shot are thrown against the fittings thus cleaning them. The machine would be useless as a cleaning process without the "steel shot". All the sand in the castings has to be completely removed. There is some waste or loss of sand in the process. When it is used as core sand it cannot be again used for that purpose but may be, and is, used as molding sand. No estimate is made as to how long it may be used for molding purposes. The steel shot may be used over and over until by friction they are worn out. They are therefore said to be "expendable".

The sand and steel shot are treated by counsel as being in the same legal status so far as here material. Their purchase and use, we repeat, are taxable unless they are exempt as "parts of such machines, attachments and replacements therefor, which are made or manufactured for use on or in the operation of such machines and which are necessary to the operation of such machines and are customarily so used", section 789(p), as amended, supra.

The term "machines, attachments and replacements" in this connection have been given a broad meaning. State v. Wilputte Coke Oven Corp., 251 Ala. 271, 37 So.2d 197; State v. Alabama Gas Corp., 258 Ala. 356, 62 So.2d 454; State v. Calumet & Hecla Consol. Copper Co., 259 Ala. 225, 66 So.2d 726; State v. Taylor, 262 Ala. 639, 80 So.2d 618. Their status is not controlled by the material of which they are composed, but by the office they serve in the process. If the article in question performs an integral function in the procedure by which the tangible personal property is produced, we think it is a part and parcel of the ma-

chinery used in its production. It is not controlled by the fact that in its use it wears out its valuable properties in that connection. Many parts of machinery wear out and have to be replaced.

On the other hand, if a product, such as grease or fuel is useful only as an aid, though vital in enabling the machine or some part of it to operate, but not itself performing a distinct function in the operation, it does not come within the exception.

The "sand" and "steel shot" here in question have an independent function in the operation. That is not simply as an aid to some other part in the performance of its service. The question is not controlled by whether it is necessary to the operation of a machine—grease and fuel are that, but they perform no specific function in the operation. It is sometimes said to depend upon whether the article has a *direct* part in the processing program. Tri-state Asphalt Co. v. Glander, 152 Ohio St. 497, 90 N.E.2d 366; Anderson & Sons v. Glander, 154 Ohio St. 561, 97 N.E.2d 29.

Insofar as the "steel shot" are concerned, we have had before us a similar question in the case of State v. Reynolds Metals Co., 263 Ala. 657, 83 So.2d 709. We there held that the shot (or balls) served a direct part in the process, and that the exemption of section 789(p) as amended, supra, applied. We think that the "sand" as used in the process is in the same legal status and its purchase and use are also exempt. It therefore follows that the decree of the circuit court, in equity, should be affirmed.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, STAKELY and MERRILL, JJ., concur.