317 So.2d 314

**Charles A. BOSWELL, as Commissioner of Revenue of The State of Alabama,**

v.

**ABEX CORPORATION, a corporation.**

**Civ. 475.**

Court of Civil Appeals of Alabama.

May 28, 1975.

Rehearing Denied June 11, 1975.

William J. Baxley, Atty. Gen., Willard W. Livingston, Counsel, Dept. of Revenue, and Asst. Atty. Gen., B. Frank Loeb, Asst. Counsel, Dept. of Revenue, and Asst. Atty. Gen., for appellant.

Steiner, Crum & Baker, M. R. Nachman, Jr., Montgomery, for appellee.

**478**

HOLMES, Judge.

The Circuit Court of Montgomery County issued an alternative writ of mandamus to the Commissioner of Revenue for the State of Alabama ordering the commissioner to refund to appellee-taxpayer $8,562.00. From this order, the commissioner has taken this appeal.

The learned and distinguished trial judge, after a hearing *ore tenus*, made a detailed finding of fact and conclusion of law.

This court has carefully reviewed the controlling authorities as they apply to the instant appeal.

The judgment of the trial court is correct and cannot be improved upon and we therefore, as set out below, adopt the pertinent part of his order as our own and affirm the ruling of the lower court.

"It is undisputed between the parties that the petition for refund of use taxes filed on February 20, 1974, by Abex with the State Department of Revenue (hereinafter 'Department') was in regular form as required by Title 51, Section 913, Alabama Code, and sought refund of use taxes allegedly paid under mistake of law or fact for the period July 1, 1970 through July 30, 1973, in the total amount of $8,562.00. Respondent has not questioned the appropriateness of this mandamus proceeding to review the denial of the petition for refund of use taxes in this amount. In short, the parties do not question that if Abex is correct in its substantive contention that the Alabama use tax does not attach to the transactions involved in these tax payments, then it is entitled to an order from this Court directing a refund of use taxes of $8,562.00.

"With these threshold matters out of the way, the Court proceeds to findings of fact and conclusions of law based upon the oral testimony and documentary and physical evidence. Upon such competent testimony, the Court finds as follows:

*"FINDINGS*

"The testimony is literally without dispute. Abex at all relevant times was engaged in the State of Alabama in the production of steel car wheels for sale to railroad companies. The process is described in detail in the oral testimony, and is illustrated by the photographs. Abex paid use taxes for the period involved—taxes which it now claims were mistakenly and errone-

ously paid—on the purchase by Abex of certain graphite or carbon electrodes. These electrodes perform a dual purpose—they supply heat for the furnace in which metal is melted as part of the process of producing wheels for railroad cars; and the electrodes supply carbon which enters into and becomes an ingredient or component part of the steel wheels manufactured by Abex. It is without dispute that the carbon contained in the electrodes united with the other metals, that carbon is required by the Association of American Railroads specifications in a certain degree in railroad wheels; that this carbon is required to improve the quality of the wheels; and that the electrodes furnish this carbon, at least in part, and are consumed in the manufacturing process.

"The gist of Abex's position before the Department and here is that its purchase of the electrodes was at wholesale under the following definition from the applicable portion of Title 51, Section 787(d), Alabama Code:

" 'The term "wholesale sale" or "sale at wholesale" means any one of the following: * * * a sale of tangible personal property or products (including iron ore) to a manufacturer or compounder which enters (enter) into and becomes (become) an ingredient or component part of the tangible personal property or products which such manufacturer or compounder manufactures or compounds for sale, and the furnished container and label thereof . . .'

Since the use tax, by its terms, is imposed only on the storage, use or other consumption of tangible personal property 'purchased *at retail*' Title 51, Section 788(b) (emphasis supplied), the purchases of carbon electrodes, at wholesale sale rather than retail sale, were not subject to tax.

"The Department denied the refund on the basis that the carbon electrodes were machine parts, and that, even though carbon from the electrodes entered into and become an ingredient or component part of the manufactured steel wheels, their purchase was, nevertheless, also subject to tax.

"In 1968 Abex applied for and secured a refund of the same Alabama use taxes on the same transactions because Abex and the Department found controlling the decision in *State v. U. S. Steel*, 281 Ala. 553, 206 So.2d 358. That case held that oxygen purchased by U. S. Steel, less than 1 percent of which became an ingredient part of the finished steel, was a wholesale sale and thus not subject to tax. The court, moreover, gave considerable weight to the departmental regulations, particularly Rule W27–171 which read then, and reads now, in pertinent part as follows:

" 'Any material purchased by a manufacturer which he intends to become a part thereof, even to the extent of $\frac{2}{100}$ of 1% or less, is purchased at wholesale, tax free.'

"The *U. S. Steel* case relied on the Supreme Court's earlier decision in *State v. Southern Kraft*, 243 Ala. 223, 8 So.2d 886 that the tax statute defined wholesale sales and retail sales without regard to the quantity of the tangible personal property which entered into or became an ingredient or component part of the finished product. Indeed, $\frac{2}{100}$ of 1 percent was precisely that part of the chemical purchased in the *Southern Kraft* case which became in ingredient of the finished product. It is obvious that this figure in W27–171 was picked up from the *Southern Kraft* case.

"Thus, as long ago as 1942 the Supreme Court of Alabama held that when the manufacture of a product requires the purchase of tangible personal property, any portion of which becomes an ingredient or component of the manufactured product, this purchase is a wholesale one and not a retail one regardless of the dominant purpose of the property so purchased. The statute; the judicial decisions; the departmental regulation; and these underlying facts remain unchanged.

**480**

■ "Two important rules of statutory construction must be applied in this case. One is that the coverage and scope of taxing statutes are strictly construed against the tax authority and in favor of the taxpayer. *State v. Helburn Co.,* 269 Ala. 164, 11 [sic] So.2d 912; *State v. Calumett and Hecla, Inc.,* 281 Ala. 549, 552, 206 So.2d 354. Another is that administrative construction which is fair and reasonable and of long standing is given controlling weight by courts which are called upon to construe the statutes; and courts are not disposed to change this construction simply because the state officials have changed their minds. Only legislatures have this power. *State v. Southern Elec. Gen. Co.,* 274 Ala. 668, 151 So.2d 216; *Hamm v. Consolidated* [sic] *Gin Co.,* 276 Ala. 611, 614–615, 165 So.2d 392; *Haden v. McCarty,* 275 Ala. 76, 152 So.2d 141.

"There is no question that the 1968 petition for refund was based upon 'the recent Alabama Supreme Court ruling on oxygen left in the final steel product in minute quantities.' Abex felt 'that these electrodes and nipples which exist in our finished product in the form of carbon are in larger quantities than was present in the oxygen case, and that we are entitled to a refund of taxes paid for the last three years on these items.' This petition was granted.

"There is no question under the undisputed testimony that the Abex operations have continued to be the same and that the function and ultimate destination of the electrodes have been the same through the years.

"As shown by its letter of denial, the case relied upon as the basis for the Department's change of mind is *State v. Newbury Mfg. Co.,* 265 Ala. 600, 93 So.2d 400. That case is clearly inapplicable. No part of the tangible personal propety there became an ingredient or component part of a manufactured product. Moreover, the Supreme Court in the *Newbury* case took great pains to explain that while a determination of the term 'machines, attachments and replacements' involved a determination of whether the 'article in question performs an integral function in the procedure by which the tangible personal property is produced,' if a product was used as a fuel or lubricant it did not come within the definition regardless of its importance. 265 Ala. at 603, 93 So.2d at 402. The undisputed testimony in the case at bar is that the carbon electrode performs a function akin to that of fuel such as coke, gas or petroleum fuel. So even under *Newbury* the electrode would not be held to constitute a machine part. Actually this analysis is really irrelevant since the crucial test is whether a part of the carbon electrode becomes an ingredient or component part of the manufactured product, and clearly and without dispute it does.

■ "Abex purchased the carbon electrodes for the dual purpose of providing heat for its furnaces and carbon as an ingredient or component part of the finished steel railroad wheels which it produced. The Alabama Legislature in Section 787(d), defined those sales transactions as wholesale ones because the carbon became an ingredient or component part of the finished product. The use tax is levied only on retail sales, and hence this taxpayer is entitled to the refund it sought. The Department should be required to adhere to its 1969 ruling based on *State v. U. S. Steel,* 281 Ala. 553, 206 So.2d 258 [358], in the absence of any change in legislation, court decision, or underlying facts."

This case is due to be and is, therefore, affirmed.

Affirmed.

WRIGHT, P. J., and BRADLEY, J., concur.