I must respectfully dissent from the decision of the majority. The premise of the trial court and of the majority decision here is that because an element (sulphur) contained in the oil purchased by Mead Corporation ultimately found its way into the manufactured products (paper and cooking liquor), the purchase of the oil was at wholesale and not subject to sales tax. That premise arises from the decisions of our appellate courts interpreting § 40-23-1 (a)(9)(b), Code of Alabama (1975) and its predecessor Title 51, § 786 (2)(i), Code of Alabama (1940) (Recomp. 1958). Robertson Associates (Ala.) Inc. v.Boswell, Ala., 361 So.2d 1070 (1978); State v. United StatesSteel Corp., 281 Ala. 553, 206 So.2d 358 (1968); State v.Southern Kraft Corp., 243 Ala. 223, 8 So.2d 886 (1942); Boswellv. Abex Corp., 55 Ala. App. 477, 317 So.2d 314 (1975). In the last three of those cases the determinative fact was that a material had been purchased, introduced directly in the manufacturing process and became a part or ingredient of the manufactured product. In the first case, the material purchased was not introduced directly into the process but was determined to have been used in a preliminary or preparatory manner. Though traces of the material were found in the end product, the supreme court held such material was not intended to be an ingredient or part of the manufactured product and was not a wholesale sale.
The majority says the inquiry as to taxability of a purchase by "Robertson" is "whether the manufacturer used the material with the intent and purpose of making it an ingredient or component part" of the finished product. I agree that is an accurate paraphrase of Robertson.
However, the facts of this case differ from Robertson and the other cases. It is undisputed that the primary purpose of the purchase of the oil was as a fuel and a source of energy for the Kraft plant. The oil was not intended to be introduced nor was it capable of being introduced as an ingredient into the manufacturing process. Its sulphur was not available for use in the process. It was necessary that the oil be oxidized and burned before its sulphur could be released. Even then the sulphur could not be used because it was combined with another element, oxygen, into the compound sulphur dioxide. That compound was not useable in the manufacturing process because it was in gaseous or vapor form and in the process of escaping into the atmosphere. To be available for use it must first be captured in specially built chambers and then brought in contact with another chemical compound, sodium carbonate. The resulting chemical reaction produced sodium sulfite, the cooking liquor which is used with steam to extract the pulp from the wood. Therefore, the sulphur as ultimately used in the manufacturing process is in entirely different form from that in which it was originally purchased in the oil. It has gone through an *Page 30 
extraction and compounding process of its own. Thus it is not the same material purchased as oil. In all of the cases heretofore decided, the material purchased was introduced in its original form into the processing "pot."
I consider the material purchased to be oil. That oil was consumed as fuel and did not enter into the "pot." The material which ultimately entered the process was a new material, sodium sulfite or hydrogen sulfite, compounded by Kraft with special equipment after addition of new elements and new materials. If the majority is correct, a material containing minute quantities of various elements or compounds, may be purchased, any element removed, combined with other materials or elements, and introduced into the manufacturing process. If any part of the original element is found in the manufactured product, the entire material is a wholesale purchase. I do not believe such a result is required from the statute, construing it most strictly against the State. I would reverse the judgment below.