EDWARD N. SCRUGGS, Retired Circuit Judge.
This appeal by the state is from a judgment holding that certain explosive magazines and anfo bins used in the strip mining of coal were subject to a use tax of V/2% rather than 4% as assessed by the Revenue Department. The appellee shall be referred to as the taxpayer.
The taxpayer manufactures anfo and also sells and distributes high explosives and detonators primarily to operators of coal strip mines, who utilize the explosives to break and loosen up the overburden over the coal to enable its removal with draglines and mechanical shovels. There is no profitable method now used for dispelling that overburden without the use of blasting tools. Explosives, and their use, are controlled by and are under the regulations of the Bureau of Alcohol, Tobacco and Firearms of the United States (A.T.F.).
Anfo is in pellet form and is composed of a mixture of ammonium nitrate and fuel oil. It is used as an oxidizer, the primary explosive, in blastings. Being a non-cap sensitive product, anfo requires a booster consisting of any type of dynamite or high explosive in order that it may be detonated. The booster, however, must first be exploded by a cap, cord or other detonator.
By A.T.F. laws and regulations, two magazines are required to be kept on the “mine permitted property,” one for boosters and the other for detonators. Those regulations require that the magazines be constructed of Vi inch steel with a non-sparking hardwood lining and with no exposed metal inside. It must be bullet proof. Two covered locks are required upon it to prevent the magazines from being opened by cutting its locks with either a torch or a hacksaw. It is violative of the federal law to keep any blasting caps or primers on the job site without these magazines. They are on skids and are movable with proper machinery. The magazines used by the taxpayer measure five feet in each dimension. Photographs of the magazines were introduced into evidence.
The bins are also on skids and, likewise, are required to be kept at the mining site when bulk anfo is employed as the primary explosive. Anfo is ordered from the taxpayer by their mine company customers as it is needed. Since the bins will hold only from 30 to 40 tons of anfo, and since, on a busy day, a mine will use 100 tons of anfo, the taxpayer must resupply their customer’s bins several times during such days. It is delivered to the job site by taxpayer’s trucks, which haul from 20 to 22 tons per load. The taxpayer’s truck backs to the top of the bin, and, by means of an auger on the truck, the anfo is unloaded from the vehicle into the bin.
The mining companies have specialized trucks which load the anfo into the blasting holes. It is a hydraulic truck which augers the material out of the vehicle into the blasting hole. Those trucks normally hold from 8 to 10 tons of anfo.
The amount of anfo exploded daily varies greatly. On certain days, 100 tons, or more, will be used, then a day or so may pass without any explosive being required. The truck that loads the anfo into the blasting holes on busy dates must be refilled with anfo many times from the bin. Those trucks have trap doors in their tops. The truck is driven under the bin and the truck’s trap door is aligned under a trap door situated on the bottom of the bin. The truck driver pulls a lever on the bin and the anfo flows into the truck by gravity. The only method whereby bulk anfo is loaded onto the mine company’s specialized trucks is by using this bin system. The only testifying witness stated that the bin had a direct, integral part in the mining process, as the strip mining of coal is presently practiced. “It’s an integral part of using explosives in the mining process. The bulk anfo comes out of ou[r] truck into the bin, out [of] the bin into their trucks, and then from the truck into the holes which is the way they use it to mine the coal.”
The bins and the magazines are owned by the taxpayer and are placed upon the strip mining, sites as a service to their customers.
*427 The legal controversy is whether the bins and magazines are taxable at the 4% rate under subsection (a) or at the IV2V0 rate under subsection (b) of section 40-23-61 of the Code of Alabama (1975). Pertinent parts of those subsections are as follows:
(a) An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property ... at the rate of four percent of the sales price of such property, except as provided in subsection (b) and (c) of this section.
(b) An excise tax is hereby imposed on the storage, use or other consumption in this state of any machines used in mining, quarrying, compounding, processing and manufacturing of tangible personal property, purchased at retail ... at the rate of one and one-half percent of the sales price of any such machine; provided, that the term “machine,” as herein used, shall include machinery which is used for mining, quarrying, compounding, processing or manufacturing tangible personal property, and the parts of such machines, attachments and replacements therefor, which are made or manufactured for use on or in the operation of such machines and which are necessary to the operation of such machines and are customarily so used.
It is conceded by the state that anfo, boosters and detonators are considered to be machines, or parts of machinery, when used in the explosive process in coal strip mining. Robertson & Associates (Alabama), Inc. v. Boswell, 361 So.2d 1070 (Ala.1978). However, the state contends that the magazines and bins in which those explosives are stored prior to their use are mere storage facilities and are not machinery, nor machine parts, used directly in the mining process. The taxpayer vigorously controverts that contention.
We agree with the taxpayer concerning the anfo bins being taxable under subsection (b), supra. The bins were made or manufactured for use in the utilization of the anfo. Bulk anfo is loaded onto the customer’s specialized truck only by means
of the bins. In order to use the bulk anfo, the bins are necessary to such use and are customarily so used. State v. Taylor, 262 Ala. 639, 80 So.2d 618 (1955). Prior to being loaded onto the mining company’s trucks, the bins do store the anfo for varying lengths of time. But, the fact that the bins have dual functions, storage and loading, is of no present consequence, for, where this particular tax provision is of doubtful application, it must be construed in favor of the taxpayer. State v. Calumet & Hecla, Inc., Alamet Division, 281 Ala. 549, 206 So.2d 354 (1968). Since one of the primary functions of the bins is to load the specialized trucks used in filling the blasting holes, the learned trial court correctly decided that the anfo bins should be taxed at the rate of IV2% as provided by subsection (b), supra, and the judgment appealed from is affirmed as the tax rate to be applied to the sales price of the bins.
However, a different result is reached with regard to the magazines. “If the article in question performs an integral function in the procedure by which the tangible personal property is produced, we think it is a part and parcel of the machinery used in its production.” State v. Newbury Manufacturing Co., 265 Ala. 600, 603, 93 So.2d 400, 402 (1957); Robertson & Associates (Alabama), Inc. v. Boswell, supra. We have summarized all of the evidence regarding the magazines. The only functions of the magazines that we harvest from the testimony are convenience to the mining company and the safe storage of the boosters and detonators. Those uses do not constitute a part of the actual mining process. The magazines are vital aids to safety, but there is no evidence that they perform an integral, distinct function in the process itself used in the strip mining of coal. The magazines, accordingly, are taxable at the 4% rate under subsection (a), supra, and the trial court erred in altering the Revenue Department’s assessment insofar as the magazines are concerned. Therefore, this case is, in part, reversed and it is remanded to the trial court for an appropriate judgment consistent with this opinion pertaining *428 to the 4% tax rate to be applied to the sales price of the magazines.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e) of the Code of Alabama (1975) and this opinion is hereby adopted as that of the court.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
WRIGHT, P. J., and BRADLEY, J., concur.
HOLMES, J., dissents.