HOLMES, Judge.
The State of Alabama appeals from the trial court’s action finding that carbon electrodes used in taxpayers’ businesses are exempt from use tax under § 40-23-62(11), Code of Ala. (1975). The taxpayers cross-appeal, contending the trial court erred in finding that the purchase of the electrodes by taxpayers was not a wholesale transaction as defined in § 40-23-60, Code of Ala. (1975), therefore making the purchase a taxable transaction.
Alabama Metallurgical Corporation and Ohio Ferro-Alloy Corporation (hereinafter taxpayers) are in the business of manufacturing silicon metal and ferro silicon metal. Taxpayers use carbon electrodes in the manufacturing process to supply the heat for the furnaces. The carbon electrodes are composed of the raw materials coal, coke, and coal tar pitch. The raw materials are baked into the form of carbon electrodes which are composed of not less than 80% of the raw coal and coke.
The carbon electrodes are placed in the furnace among the furnace burden of quartz ore, coal, coke and wood chips. An electric current is passed through the electrodes to generate heat in the furnace burden. When a certain temperature is reached a chemical reaction takes place and the mixture in the furnace becomes silicon metal.
*43 A use tax was assessed on the carbon electrodes against the taxpayers. The taxpayers petitioned for a redetermination with the Department of Revenue. The re-determination was denied and the taxpayers appealed the final determination to the circuit court.
After an ore tenus hearing, the trial court rendered a judgment finding that the carbon electrodes were exempt from use. tax by virtue of § 40-23-62(11), Code of Ala. (1975). Additionally, the trial court found that the purchase of the electrodes was not a wholesale transaction and therefore the electrodes were subject to tax as tangible personal property purchased at retail.
The taxpayers and the Department now appeal. The taxpayers contend that the purchase of the electrodes was a wholesale sale as contemplated by § 40-23-60(4)(b), Code 1975, and is not taxable. The Department contends that the electrodes are not exempt from use tax.
I
First, as to the State’s contention that the trial court erred in finding that the carbon electrodes are exempt from use tax, we find we do not agree.
The pertinent part of the exemption statute reads:
“§ 40-23-62. Exemptions.
“The storage, use or other consumption in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this article:
[[Image here]]
“(11) Coal or coke to be stored, used or consumed by manufacturers, electric power companies and transportation companies for use or consumption in the production of by-products or the generation of heat or power used:
“a. In manufacturing tangible personal property for sale;
“b. For the generation of electric power or energy for use in manufacturing tangible personal property for sale or for resale; or
“c. For the generation of motive power for transportation.”
It is the State’s position that because the raw coal and coke is baked and mixed to make the electrodes it is different physically and chemically from the materials exempted by the statute; that is, the electrodes are not coal and coke for purposes of § 40-23-62.
The parties stipulated that the carbon electrodes are installed in the furnaces and used to generate heat in manufacturing tangible personal property for sale. Therefore, if the carbon electrodes are appropriately composed of coal or coke the taxpayers qualify for the exemption under § 40-23-62, Code of Ala. (1975).
Without going into the complicated and technical evidence that was presented at trial, suffice it to say that there is ample evidence to support the trial court’s determination that the carbon electrodes are exempt from use tax. There was testimony to the effect that when the coal and coke are baked to make the electrodes some gases are released and what is left is basically coke, although there is some chemical change from the raw materials.
It is undisputed that the electrodes are composed of over 80% coal, coke, and coal tar pitch. Calcined coal, raw coal that has been heated to a certain temperature, is mixed with heat treated by-product coke and then crushed and mixed in a steam-heated mixer with the coal tar. This mixture is then heated until certain gases or volatiles are released and the solid electrode is produced. This process is done in order to make the coal and coke in the electrode more conductive. Under one view of the evidence, this court gathers that the carbon electrodes are basically coke and not significantly different chemically from the raw materials used to form the electrode. See State v. Lamson & Sessions Co., 269 Ala. 610, 114 So.2d 893 (1959), for a more detailed definition of “coke.”
*44 Accordingly, the trial court was correct in its determination that the electrodes are exempt under § 40-23-62(11) as coke used to generate heat in the manufacture of tangible personal property for sale.
II
The taxpayers contend that the trial court erred in finding that the purchase of the carbon electrodes was taxable as a retail sale of tangible personal property and not a wholesale transaction as contemplated by § 40-23-60.
The pertinent parts of the relevant statute, § 40-23-60, Code of Ala. (1975), read as follows:
“For the purpose of this article, the following terms shall have the respective meanings ascribed to them in this section:
[[Image here]]
“(4) Wholesale sale or sale at wholesale. ...
[[Image here]]
. “b. A sale of tangible personal property or products, including iron ore, to a manufacturer or compounder which enter into and become an ingredient or component part of the tangible personal property or products which such manufacturer or compounder manufactures or compounds for sale, and the furnished container and label thereof;
[[Image here]]
“(5) Sale at retail or retail sale.... Sales of tangible personal property or products to manufacturers, quarry operators, mine operators or compounders, which are used or consumed by them in manufacturing, mining, quarrying or compounding and do not become an ingredient or component part of the tangible personal property manufactured or compounded are retail sales.”
The question in the present case is whether the carbon electrodes are used with the intention that they, or some part of'them, become an ingredient of the final product. Robertson & Associates (Alabama), Inc., v. Boswell, 361 So.2d 1070 (Ala.1978), sets forth the test to be applied in situations such as that presented by the case at bar. The test is whether the manufacturer used the material with the intent and purpose of making it an ingredient or component part of the finished product; or was its. presence in the finished product merely incidental to its primary function. In other words, if any part of a product purchased by a manufacturer is intended to remain for a purpose and does remain in the manufacturer’s finished product, the purchase is at wholesale, and therefore is not subject to sales tax. Furthermore, the material in question can serve a dual function, in this case, supply heat and become an appropriate ingredient of the finished product. Boswell v. General Oils, Inc., 368 So.2d 27 (Ala.Civ.App.1978); cert. denied, 368 So.2d 30 (Ala.1979).
To this court the case of Boswell v. Abex Corp., 55 Ala.App. 477, 317 So.2d 314, cert. denied, 294 Ala. 334, 317 So.2d 317 (1975), when viewed in conjunction with Robertson & Associates (Alabama), Inc. v. Boswell, 361 So.2d 1070 (Ala.1978), and Boswell v. General Oils, Inc., 368 So.2d 27 (Ala.Civ.App.1978); cert. denied, 368 So.2d 30 (Ala.1979), is virtually indistinguishable from the present case.
In Abex the taxpayers used carbon electrodes in manufacturing steel railroad car wheels. As in the present case the carbon electrodes were used to generate heat and also to supply carbon that becomes part of the finished product. This court held that the purchase of the electrodes was a wholesale transaction not subject to retail sales tax as provided by statute because the carbon electrodes were used with the intent that they become an integral part of the product.
In the present case it is undisputed that the silicon metal contains carbon, and there is evidence that the carbon electrodes supply approximately 10% of the total amount of carbon in the finished product. It is evident that the taxpayers expect a certain amount of carbon in the finished product and that they make their calculations so that the carbon electrodes provide a certain *45 amount. In other words, the taxpayers intend for the carbon electrodes to provide a percentage of the required carbon in the finished product for sale. There is evidence that carbon is needed in the finished product to assure that the silicon metal does not contain slag.
Applying the Robertson test and the Abex case to the facts of the case at bar, we find that the carbon electrodes are used with the intention that carbon from the electrodes becomes a component part of the finished product thus qualifying the purchase as a wholesale transaction not subject to sales tax.
In view of the foregoing, that part of the trial court’s decree finding that the carbon electrodes are exempt from use tax is affirmed, and that part of the trial court’s decree finding that the purchase of the electrodes was a retail transaction is reversed.
This case is affirmed in part, reversed in part, and remanded for the trial court to enter a judgment not inconsistent with the above opinion.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
WRIGHT, P.J., and BRADLEY, J., concur.