59 So.2d 576

### STATE v. ADVERTISER CO., Inc.

3 Div. 613.

Supreme Court of Alabama.
May 29, 1952.

Rehearing Denied June 26, 1952.

Si Garrett, Atty. Gen., and M. Roland Nachman, Jr., Asst. Atty. Gen., for appellant.

Steiner, Crum & Baker, Montgomery, for appellee.

426

Deramus, Hawkins, Fitts & Mullins, Birmingham, amici curiae.

BROWN, Justice.

The appeal in this case is by the State from a final decree of the Circuit Court of Montgomery County, in Equity, Judge Walter B. Jones presiding, vacating in part an assessment of use taxes made by the Department of Revenue against property purchased by the taxpayer for use in its business of processing and creating two daily newspapers published as The Montgomery Advertiser and The Alabama Journal. After protest made by the taxpayer to the Department of Revenue that the property, the subject of the assessment, was exempt by the provisions of Code of 1940, Tit. 51, § 789 subsections (*l*) and (p) Pocket Part, was denied, the taxpayer appealed to the circuit court, in equity, as authorized by the statute in such cases. Code of 1940, Tit. 51, § 140.

■ At the very threshold of the case presented on the record, we are confronted by the settled law, that the use tax was levied by the legislature as a complement to the sales tax to prevent evasion of the sales tax by taxpayers resident in this state acquiring by purchase or otherwise goods and chattels at retail and shipping or transporting the same into Alabama for use and consumption. Paramount-Richards Theatres, Inc., v. State, 252 Ala. 54, 39 So.2d 380; S.C. (2nd appeal), 256 Ala. 515, 55 So.2d 812; Code of 1940, Title 51, § 787 (use tax act) and § 788 (Pocket Part).

On the other hand the exemptions provided for in Title 51, § 789, Code of 1940 (Pocket Part), are very broad and liberal. Subsection (*l*) of said § 789 exempts newsprint paper, newspapers and religious publications. Subsection (p) § 789 (Pocket Part) exempts "Machines used in mining, quarrying, compounding, processing, and manufacturing of tangible personal property; provided that the term 'machines,' as herein used, shall include machinery which is used for mining, quarrying, compounding, processing or manufacturing tangible personal property, *and the parts of such machines, attachments and replacements therefor, which are made or manufactured for use on or in the operation of such machines and which are necessary to the operation of such machines and are customarily so used."* [Italics supplied.] State v. Try-Me Bottling Co., ante, p. 128, 57 So. 2d 537.

In disposing of the controversy, the learned trial Judge filed with his decree an opinion outlining the controversy between the parties and the law applicable thereto. Said opinion of the circuit court is here and now adopted and approved by this Court.

"The evidence and the agreed statement of facts disclose that the appellant owns and operates its own printing plant, representing a substantial investment of capital, and operates in all some forty-nine different presses and machines, the functions of which are described in detail in the testimony and by the various photographs in evidence. It employs a large force of more than one hundred skilled technicians and common laborers, as well as editors, reporters, news gatherers and clerical force.

"In respect to its manufacturing or processing features, it operates a foundry, with necessary implements and equipment, located in the plant, manufactures all of its type—the method of which is described in detail; trimmer or cutting machines, tying machines and labeling machines, and the like. It molds or casts the metal plates from mats, giving them a semicircular form for use and to fit on the cylinders of the press and a number of other similar features requiring mechanical and manual labor. The agreed statement of facts reciting in part, in this connection:

" 'In the production and publication of the finished product, i. e., the newspapers, Montgomery Advertiser and Alabama Journal, both the news and the advertising copy must go through what is known as the composing and stereotyping departments, where type is set by machines using what is known as type metal, then put together in page forms, and from there going to the stereotype department, where machines are used to imprint on what is known as newspaper mats, the type as set in the printing or composing department. From this page mat a plate is cast by machine, using composition metal, which after being cast is attached to the printing machine or press cylinders and the matter thereon transferred to newsprint running through machines. The metal used in producing the type and also in producing the plates is remelted and used over and over again, with the necessity of certain parts of it being from time to time refined. The mats used in making the plates necessary to complete the finished product run from 2000 to 2500 mats per month, and are of no other value after casting the original plate.

" 'Certain large size type and replacement thereof are manufactured in the plant, and all or most of the ordinary size type is manufactured by machine in said plant.'

"Thus transforming the blank newsprint paper into a new and entirely different form, to wit, the newspaper and for a new and different use.

"The statement of facts further recites:

" 'With the exception possibly of the ink, all or practically all of the items so sought to be taxed were and are, in the main, machines, parts of such machines, attachments and replacements, used by complainant in the production and publication of said newspapers, tangible personal property, and which machines, parts, attachments, and replacements were made or manufactured for use on or in the operation of such machines and which were and are necessary to the operation of such machines and were and are generally and customarily so used in the production and publication of newspapers.'

"While the extent or proportion of the manufacturing features entering into the enterprise seems not material or controlling, if substantial (State v. Southern Kraft Corp., 243 Ala. 223, 8 So.2d 886), it is evident that it is quite substantial here, and without which the paper could not be published or produced.

"It is conceded that appellant, however, does not do any 'job printing' business, such as bookbinding, lithographing, photoengraving, and the like nor does it do any contract work.

"It will be observed that the language used in this exemption clause is broad and comprehensive in the use of the words, 'compounding, processing, or manufacturing', used disjunctively, and was so intended by the Legislature, and designed to cover all industries and enterprises of that general nature, and to be liberally construed. This would seem to be further indicated by the inclusion herein of the words 'mining and quarrying', which are not considered as either manufacturing or processing, since they apply to elements or products that are and remain in their natural state, but they are nevertheless brought within the exemption. So, too, the use of the words *of tangible personal property* is significant. [Italics supplied.]

"While exemption clauses are, of course, to be construed most strongly against the taxpayer, they are not to be so strictly construed as to defeat or destroy the intent and purpose of the enactment, and no strained construction will

428

be given them that will effect that end, State v. Wertheimer Bag Co., 253 Ala. 124, 127, 43 So.2d 824, and it has been said that 'If the act expresses the intent to exempt certain property, judicial Construction is not appropriate to defeat the exemption.' In re Bendheim's Estate [100 Cal. App.2d 398], 223 P.2d 874.

"Since there is no definition of the words 'processing' or 'manufacturing' found in the statute here, in finding the meaning for those terms as there used, we first consider the intent and purpose of the Legislature in the enactment of the exemption, and then, if necessary resort to the definition as found in the dictionaries, which usually give us the common understand and to which our courts usually resort.

"The intent and purpose of the enactment here would seem to be clear and the Supreme Court in Curry, Com'r v. Alabama Power Co., 243 Ala. 53, 8 So.2d 521, has defined both the words 'manufacturing' and 'processing.' 'Manufacturing' as:

" 'Making of anything by hand or artifice, or the process of making anything by the art of reducing materials into a form fit for use, by the hand or by machinery, or the production of articles for use from raw or prepared materials, by giving such materials new forms, qualities, properties, or combinations, whether by hand labor or by machinery.'

"And quoting from the definition in Webster's New International Dictionary, it defined 'processing' as:

" 'A series of actions, motions, or operations definitely conducing to an end, whether voluntary or involuntary; progressive act or transaction; continuous operation or treatment; a method of operation or treatment, esp. in manufacture; * * *

" 'To subject to some special process or treatment. * * * To subject (esp. raw material) to a process of manufacture, development, preparation for the market, etc.; to convert into marketable form, as livestock by slaughtering, grain by milling, cotton by spinning, milk by pasteurizing, fruits and vegetables by sorting and repacking; * * * to make usable, marketable, or the like, as waste matter or an inferior, defective, decomposed, substance or product, by a process, often a chemical process; * * * d. to produce or copy by photo-mechanical methods; to develop, fix, wash and dry, or otherwise treat (an exposed film or plate).'

"There are many other definitions, all of a similar general nature.

"In Mayor [and City Council of Baltimore] v. Price, 168 Md. 174, 177 A. 160, it is aptly said with respect to 'manufacturing':

" 'Its meaning has expanded as workmanship and art have advanced, so that now nearly all artificial products of human industry, nearly all such materials as have acquired changed conditions or new specific combinations, whether from the direct action of the human hand, from chemical processes, devised and directed by human skill, or by the employment of machinery, which, after all, is but a higher form of the simple implement with which the human hand fashioned its creations in ruder ages, are now commonly designated as manufactured.'

"And the word 'compound' is defined as:

" 'To put together, as elements, ingredients, or parts, to form a whole; to combine to unite; to form or make up as a composite product; to combine different elements, ingredients, or parts, as to combine in medicine.' 8 Words & Phrases, p. 302.

"It is generally, by all the authorities, and expressly in Long, Com'r v. Roberts & Son, 234 Ala. 570, 176 So. 213, held, and conceded here, that what is commonly called 'job printing' is manufacturing, and the product of each is definitely tangible personal property. Each is manufactured or processed on machines of the same general character, the method is practically the same, and there would seem to be no substantial practical, or logical reason for any distinction between the two enterprises. State v. Dupre, 42 La.Ann. 561, 7 So. 727.

■ "There would seem to be little if any doubt that the publication of the newspaper, under the evidence here, comes clearly within the general definition of the terms 'compounding, processing or manufacturing'; and considering the broad language of the act and its intent and purpose, they would definitely come within the exemption there provided. Nor can it be doubted, as stated, that a newspaper when printed or published is 'tangible personal property' * * * something that can be seen, felt, handled, sold commercially * * * and has physical substance. Curry, Com'r v. Alabama Power Co., supra.

■ "The evidence further discloses that for approximately ten years both the taxpayer and the then heads of the Department of Revenue so interpreted the act and no demand was made for the tax until June, 1950, when the assessment was levied or made. But since there does not appear to have been any formal ruling or order made by the Department, the Court does not consider this as binding on the State, though it may be considered in the interpretation of the Act.

"There is a line of cases from other states to which the Court's attention has been called, which hold that the publishing of a newspaper is not 'manufacturing', and the State insists that they are controlling or should be followed here. An examination of those cases discloses that they were dealing with the particular statute there under consideration—statutes generally using the single word 'manufacturing' in a rather restricted sense, and most of them having reference more particularly to the business of the publisher rather than to the machines used, and making no reference to the production of 'tangible personal property'; the reason given, in the main, is that though the definition of manufacturing is broad enough to cover it, the publication of a newspaper is not commonly spoken of as 'manufacturing.'

"While some of those cases use rather broad language, none of them are based upon nor were considering a statute as broad as, or similar to that of our own, and none of them refers to the use of the term 'processing,' which is probably the more appropriate term to be here applied. As said by several of the annotators and, in substance, by our own court in State v. Southern Kraft Corp. supra:

" 'Because of the variance in the use tax laws respecting the exemption of enumerated transactions, there is very little in common among the cases decided under such exemption clause.'

"Nor is the Court impressed with the soundness of the reasons stated in most of those cases. The Court is, however, impressed with the soundness of the reasons and analysis stated in the Louisiana case of State v. Dupre, 7 So. 727, which definitely holds that the publishing of a newspaper is manufacturing and gives a very clear, and I think logical, reason for the conclusion. While that case has been criticized in some of the cases, in that 'line of cases' above mentioned, and in one other Louisiana case, it has never been overruled, but on the contrary has been several times cited with approval, and it seems sound, particularly as applied to the facts in this case.

"The Court is likewise impressed with the underlying principle in the cases Curry v. Alabama Power Co., supra, and State v. Southern Kraft Co., supra, which are helpful and have considerable influence on the questions here. Certainly each case must stand on its own foundation and be ruled by facts presented in the individual case.

■ "It is insisted by the State that the *printer's ink*, which forms a rather substantial item in the assessment, is not exempt. It is insisted by appellant that it is exempt, since it is classified as a 'wholesale sale' under the definition of that term as used in the statute, Code 1940, Title 51, Section 787(d), which reads:

" '(d) the term "wholesale sale" or "sale at wholesale" means a sale of tangible personal property by wholesalers to licensed retail merchants, jobbers, dealers, or other wholesalers for resale and *does not include a sale by wholesalers to users or consumers not for resale*. The term "Wholesale sale" shall include a sale of tangible personal property or products (including iron ore)

to a manufacturer or compounder which enters into and becomes an ingredient or component part of the tangible personal property or products which he manufactures or compounds for sale, and the furnished container and label thereof.'

"The ink, of course, becomes absorbed in and is an ingredient or component part of the paper itself.

"In State v. Southern Kraft Corp., 243 Ala. 223, 8 So.2d 886, wherein the Kraft Corporation was engaged in the manufacture of Kraft pulp and Kraft paper from sap pine for resale, and wherein it was sought to tax the various chemicals entering into the manufacture of that product and becoming an ingredient or component part thereof, the court said:

" 'Where tangible personal property used in the manufacture of tangible personal property for sale is intended to and does in fact become a substantial ingredient or component part of the finished product, such use is nontaxable under the use tax act.'

"To the same effect is the holding in Bedford v. Colorado F. & I. Corp. [102 Colo. 538], 81 P.2d 752, 756.

"If the newspaper is a manufactured or processed product the ink is manifestly exempt from the tax, and the Court believes this conclusion is conceded.

■ "The State also insists that though it be held that the machines were here used in manufacturing or processing, certain of the items in the assessment were nevertheless properly assessed, such as 'metal, mats, tying wire, automatic tying machines and label pasting machines.'

"The mats were used to cast the metal plates carrying the type, the plates, as before stated, being mechanically formed or pressed in appellant's foundry into semicircular form to fit the cylinders of the press.

"The testimony is to the effect that they are necessary in the operation of the press, and that the press would be wholly useless without them, and vice versa. These items, it would seem, from the evidence and the stipulation of facts, were therefore necessary parts of or attachments for the machines, were designed for the purpose and were necessary and customarily so used.

■ "The Court, however, has some doubt as to the tying wire used for wrapping the bundles of papers. Wrapping twine is specifically exempt, under Subdivision (t) of said section, and appellant insists that the wire should be exempt, since it was used merely as a substitute for the twine; and that the use was what the legislature intended to exempt. Since the exemption was of twine, and not of wire, the State should be given the benefit of the doubt.

"The Court has no doubt that the assessment on items designated as, subscriptions to trade publications, labels and paste for bundles, and printed paper boy supplements, was valid, and that the tax should be paid on those items, as also on the tying wire.

■ "Counsel for the State in their brief state that the Circuit Court of Mobile County has recently decided this question in a similar case there tried, and that that decision should be controlling here. There is nothing in the record here concerning that case, and this Court does not know what questions were there presented, nor what evidence was submitted, nor the reasons for the conclusions there reached, but, even if it did, this being a court of coordinate jurisdiction, neither the finding nor the conclusion there reached would, of course, be binding on this Court. While judicial opinions, the responsibility of deciding this case rests upon this Court, and it must be guided by the facts here presented and by its own convictions of what the law is. the Court has a very high regard for the distinguished judge of that court and his

"Counsel for the State likewise insist, in their brief, that 'the taxpayer—newspapers of Alabama' shortly after the decision in the Mobile case, attempted to have the law amended, rather than appeal from the Mobile decision; that the amending act was passed by the legislature but vetoed or not signed by the then Governor, and that

this should be taken as an interpretation by the legislature that the newspaper was not within the exemption clause; while appellant insists that the legislature presumably, having knowledge of the construction placed on the act by the taxing authorities for some ten years, and that a court had recently decided to the contrary, simply sought to make certain that which was originally intended, so as to remove any doubt.

"It would seem sufficient to say that there is no evidence in the record here as to who sponsored the amendment, nor any of the circumstances relating thereto, even if that were material. The question however would seem to be disposed of by 1 Sutherland, Statutory Construction (3d ed.), Sections 130–131, which latter section reads:

 " 'If the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act—a formal change—rebutting the presumption of substantial change.'

"The Court does not regard this matter as material here.

"This case and that of the Progressive Farmer Company were submitted at the same time, though separately tried. The facts as to the main question at issue are not materially different and the law applied is applicable to each of the cases.

"From the broad language of the exemption clause here, and under the evidence in this case, the Court is definitely of the opinion that the machines and all of the other items in the assessment against appellant, other than those above enumerated, were used in 'compounding, processing, or manufacturing tangible personal property', and the parts thereof or attachments therefor, 'were made or manufactured for use on or in the operation of such machines, were necessary to such operation and were customarily so used,' within the purview of said Subsection (p), and were and are therefore exempt from the use tax, and it will be so ordered."

It results, therefore, that the decree of the circuit court is due to be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and STAKELY, JJ., concur.