TORBERT, Chief Justice.
Joseph F. Bischoff, a licensed real estate broker, brought suit against Robert B. Smith, Patricia H. Smith, and P & T Investments, Inc., a real estate brokerage firm, alleging breach of contract by Robert and Patricia Smith (owners of the brokerage firm), debt for work and labor done for P & T, and conversion of trust funds by all defendants. Notice of this action was given to the Alabama Real Estate Commission (Commission). Bischoff obtained a default judgment and then proceeded to file a claim against the Real Estate Recovery Fund (Fund), pursuant to Code 1975, § 34-27-31(e)(2) (1982 Supp.), seeking payment on the original judgment from the Fund. The Commission filed a pleading in opposition to the application for payment.
The trial court found that Bischoff was an aggrieved party under the Fund Act, § 34-27-31(c), et seq., and ordered the Commission to pay Bischoff $9,384.78 from the Fund.
The Court of Civil Appeals affirmed; we granted certiorari and now reverse.
The issue presented is whether the acts of the Smiths and P & T constitute violations of the Alabama Real Estate License Law, § 34-27-30, et seq., and therefore give rise to an action against the Fund.[1] Code 1975, § 34-27-31(e)(2) (1982 Supp.), sets out the scope of the Fund:
“When any aggrieved person recovers a valid judgment in any court of competent jurisdiction against any broker, salesman, corporation, partnership or branch office, for any act, representation, transaction or conduct which is in violation of the provisions of this chapter or the regulations promulgated pursuant thereto, which occurred on or after October 1, 1979, the aggrieved person may, upon the termination of all proceedings, including reviews and appeals in connection with the judgment, file a verified claim in the court in which the judgment was entered and, upon 10 days written notice to the commission, may apply to the court for an order directing payment out of the real estate recovery fund of the amount unpaid upon the judgment, subject to the limitations stated in this section.”
*742 (Emphasis added.) The operative language of § 34-27-31(e)(2) is “any act ... in violation of the provisions of this chapter.”
In order to determine if the Smiths’ actions violate Chapter 27, we must look to § 34-27-36(a), which lists the violations constituting grounds for refusal, suspension, or revocation of licenses:
“The commission may upon its own motion and shall, upon the verified complaint in writing of any person, hold a hearing for the refusal to license or the suspension or revocation of a license previously issued. The commission shall have full power to refuse a license for cause or to revoke or suspend a license or otherwise punish the licensee, as provided herein, where such license has been obtained by false or fraudulent representation, or where the licensee, in performing or attempting to perform any of the acts mentioned herein, is deemed to be guilty of:
“(1) Making any substantial misrepresentation;
[[Image here]]
“(6) Failing, within a reasonable time, to account or to remit any moneys coming into his possession which belong to others; a complete record must be kept of funds showing to whom the money belongs, date deposited, date of withdrawal and other pertinent information concerning the transaction, and all escrow funds shall be deposited in a separate account in a financial institution approved by the commission and accounted for at all times;
[[Image here]]
“...; or
“(28) Any act of conduct, whether of the same or of a different character than hereinabove specified, which constitutes or demonstrates bad faith, incompetency or untrustworthiness or dishonest, fraudulent or improper dealing.”
(Emphasis added.) The statute refers to wrongful conduct committed in the performance of “any of the acts mentioned herein.” This reference is to those acts for which a real estate license is required under the Chapter. Chapter 27 does not purport to generally regulate matters for which a license is not required.
Section 34-27-30 describes the acts for the performance of which a real estate license is required and which are therefore subject to the Commission's regulation:
“It shall be unlawful for any person, partnership or corporation for a fee, commission or other valuable consideration or with the intention or expectation of receiving or collecting a fee, commission or other valuable consideration to list, sell, purchase, exchange, rent, provide rent list for a fee, lease, option or auction real estate or the improvements thereon, or to negotiate or attempt to negotiate any real estate transaction, advertise or hold himself out as engaged in the real estate business unless such person, partnership or corporation is licensed as a broker or salesman under the provisions of this chapter or is excluded from the operation of this chapter by other provisions hereof.”
(Emphasis added.) Section 34-27-30 outlines the kinds of activities which are subject to Chapter 27’s regulatory ambit. Hence, for example, the § 34-27-36(a)(l) prohibition against substantial misrepresentations only applies to situations where a real estate license was necessary in order for one to be involved in the underlying transaction. Because § 34-27-31 only applies to acts in violation of Chapter 27, which is limited to specific real estate acts, the Fund only applies to real estate transactions. Despite the holding of the Court of Civil Appeals that the Legislature failed to limit recovery from the Fund to situations involving wrongful acts committed in a transaction for which a license is required, we find that the Fund is limited to real estate transactions.
Admittedly, the Legislature could have granted to the Commission the power to regulate licenáees in broad terms similar to the high standards of conduct which apply to lawyers even when not engaged in the practice of law. See ABA Comm, on Ethics and Professional Responsibility, Formal *743 Op. 336 (1974). By limiting license revocation to wrongful conduct occurring when the licensee performs acts subject to the real estate license law, the Legislature has similarly limited the Fund by tying it to the violations of the Chapter.
In addition to the express language of Chapter 27, we also find other indications that the Legislature did not intend the Fund to cover the situation described in this case. In interpreting a statute, we necessarily pay attention to the language and purpose of an act, its history and structure, and the knowledge of the Legislature at the time of passage. Posner, “Statutory Interpretation — in the Classroom and the Courtroom,” 50 U.Chi.L.Rev. 800, 817 (1983). In considering the Legislature’s intention, we must search for signs which tell us to interpret the statute broadly or narrowly.
It is evident that the Legislature did not intend the Fund to provide redress for the wrongdoing of licensees while not involved in a real estate transaction. For example, § 34-27-36(a)(25) provides that it is a ground for suspension or punishment for a licensee to be “convicted of a felony or [to enter] a plea of guilty or nolo contendere to a felony charge.” Unless the Fund is limited to wrongdoing in connection with a real estate transaction, the Fund would create a state-funded victim compensation program for damages which arise from the criminal conduct of real estate licensees. The Legislature surely did not intend such a result. This example can be multiplied over and over by allowing recovery for the other 27 types of wrongdoing listed in § 34-27-36(a) without regard to whether the action is in connection with a real estate transaction. We are confident that the Legislature did not intend in creating the Fund to provide insurance to cover the public’s interaction with licensees[2] regardless of whether the occurrence involved real estate.
Our holding as to what the Legislature intended finds support in cases from other jurisdictions. For example, in McGaughey v. Fox, 94 Cal.App.3d 645, 651, 156 Cal.Rptr. 593, 597 (1979), the California court held:
“Plaintiff correctly argues that because Business and Professions Code section 10471 is intended to protect the public against loss resulting from fraud of real estate brokers, the statute is remedial and therefore must be liberally construed. (Nordahl v. Department of Real Estate (1975) 48 Cal.App.3d 657, 663, 121 Cal.Rptr. 794.) However we cannot, under the guise of liberal construction, disregard the express provisions of section 10471 which authorize recovery from the Real'Estate Fund only if a broker performed acts for which a real estate license is required.”
See Powers v. Fox, 96 Cal.App.3d 440, 158 Cal.Rptr. 92 (1979). See generally Torres v. Texas Real Estate Comm’n, 605 S.W.2d 394 (Tex.Civ.App.1980) (strict compliance). The California statute is admittedly much clearer in limiting recovery to real estate transactions. Cal.Bus. & Prof.Code § 10471(a) (West Supp.1983). Nevertheless, because we construe the language in our . Fund Act as referring to the earlier section of Chapter 27 which describes the acts for which a license is required, we find that Alabama law, like California’s, limits recovery to situations involving wrongdoing arising out of real estate transactions.
Since we hold that recovery is limited to acts committed in real estate transactions, we must now decide if the dispute between Bischoff and the Smiths concerned a real estate transaction. In this case, Bischoff was an independent contractor doing work and labor who was cheated out of his compensation by his employer. He did not purchase or sell property through the Smiths and their company. He merely worked for them. Apparently, the busi *744 ness failed owing him money and the Smiths fled. Although the debt may well have originated in a real estate transaction, the subsequent failure of the Smiths to pay was not directly connected to a real estate transaction and, therefore, the Fund does not apply. As Judge Wright noted in his dissent in the Court of Civil Appeals decision, “The relationship between broker and salesman is personal and private and is governed by ordinary rules of contract as any other employer-employee or principal and agent relationship.” Because the failure to pay is not directly related to the underlying real estate transaction, there can be no recovery from the Fund.
Since the Fund is limited to wrongdoing by licensees in connection with a real estate transaction, the trial court and the Court of Civil Appeals erred in allowing recovery in this case.
REVERSED AND RENDERED.
MADDOX, FAULKNER, JONES, AL-MON, SHORES, EMBRY, BEATTY, and ADAMS, JJ., concur.

. The definition of an aggrieved person under § 34-27-31 has recently been amended to exclude "real estate licensees or bonding companies when they are not principals in a real estate transaction_” 1983 Ala.Acts, No. 83-516, § 1. Previously, the term "aggrieved person” was unrestricted. The new provision, if in force at the time of commencement of this lawsuit, would have precluded recovery by Bischoff. Because of the result reached in this case, we need not decide whether the Legislature’s amendment constitutes an interpretation of the original act. See State v. Advertiser Co., 257 Ala. 423, 431, 59 So.2d 576, 582 (1952) (amendment enacted soon after controversy commences is logically regarded as legislative interpretation of original act).

. Obviously, some of the types of wrongdoing are specifically limited by the particular subsections of § 34-27-36(a) which describe the conduct. See § 34-27-36(a)(14) ("[presenting to the Alabama Real Estate Commission ... a check that is returned unpaid”). Whenever the conduct is not limited or described in § 34-27-36(a), the general limitation applies which requires that the wrongdoing occur in connection with a real estate transaction.