PER CURIAM.
This is a tax case.
The appellants, the Association of Alabama Professional Numismatists, Inc., (hereafter, the Association) sought a writ of mandamus or a declaratory judgment in the circuit court, essentially to have the sale of gold and silver in the form of coins, bullion, nuggets, flakes and other forms exempted from Alabama's sales and use tax. Ala.Code §§ 40-23-2 and 40-23-61 (1975). The circuit court determined that a sales or use tax could be applied to the sale of gold and silver for investment purposes or for numismatic purposes. The Association, through able counsel who has favored this court with an excellent brief, now appeals and we affirm.
For the sake of clarity and brevity, the following is equally applicable to the use tax.
Section 40-23-2, Code of Alabama (1975), provides in part as follows:
“There is hereby levied, in addition to all other taxes of every kind now imposed by law, and shall be collected as herein provided, a privilege or license tax against the person on account of the business activities and in the amount to *869 be determined by the application of rates against gross sales, or gross receipts, as the case may be, as follows:
“(1) Upon every person, firm, or corporation ... engaged or continuing within this state in business of selling at retail any tangible personal property whatsoever, including merchandise and commodities of every kind and character not including, however, bonds or other evidences of debts or stocks, .... ”
A “sale” under Section 40-23-l(a)(5) is defined as:
“(5) Sale or Sales. Installment and credit sales and the exchange of properties as well as the sale thereof for money, every closed transaction constituting a sale.”
In 1975, the Department of Revenue implemented Sales and Use Tax Rule G 27-936 to set guidelines for the taxing of gold. The Department also applies the rule to silver. The rule is:
“Sales of gold in coin, bullion, nugget, flake or other form to purchasers within the state are subject to the retail sales or use tax. In any form other than as a mineral in place, not yet extracted, gold is tangible personal property subject to the usual rules of taxation. Therefore, exemption is allowed only if the sale is for resale in the regular course of business or if the gold becomes an ingredient or component of a new article for sale. Sales to purchasers for investment or speculation are fully taxable and are treated as sales of coins, stamps, paintings, antiques or other valuables purchased by collectors. When applicable, the tax is measured by the full selling price without deductions for brokerage fees, service fees or premiums included in the gross price.
“Following are a few guidelines for the taxation of gold:
“(1) Gold purchased and delivered outside the state is subject to use tax at the time it is brought into the state.
“(2) Sales of gold to persons who take only a document of ownership covering gold remaining outside the state are exempt from sales and use tax.
“(3) Sales to persons who use gold in the rendition of professional or commercial services such as dentists or dental laboratories are taxable.
“(4) Agents, including gold jobbers and brokers, who sell gold at retail in their own name must collect retail sales tax thereon.”
There are two dispositive issues: (1) whether gold and silver bought and sold for investment or numismatic purposes are “tangible personal property” subject to sales and use tax and (2) whether the sales and use tax levied on gold and silver by the State of Alabama is an improper intrusion on the Federal Government’s supreme power over monetary matters.
First, we will address the question of whether gold and silver are tangible personal property when used for investment or numismatic purposes.
The Supreme Court of Alabama has defined tangible personal property as “something that can be seen, felt, handled, sold commercially and has physical substance.” State v. Advertiser Co., 257 Ala. 423, 59 So.2d 576, 580 (1952).
The evidence in the present case is that silver bullion consists of sacks of solid silver U.S. coins sold by weight, not by the face value of the coins. The price is determined by applying the price per ounce of silver at the time of the sale to the weight of the bag.
The gold and silver coins are sold as individual coins rather than by weight. However, a particular coin’s value is determined by the amount of the metal in the coin and the fluctuating price of gold and silver in relation to the value of the U.S. dollar.
Generally, these coins do not circulate as currency but are sold like other commodities, such as coal, with the idea that the coin’s value will increase. Furthermore, we are unaware of any authority in Alabama that holds coins or money are not tangible personal property. Put another way, whether the coins are considered as *870 commodities or money, either would be tangible personal property.
Under the above facts and circumstances, gold and silver such as we are concerned with in this case are clearly tangible personal property as defined by our supreme court in State v. Advertiser Co., 257 Ala. 423, 59 So.2d 576 (1952), and therefore subject to sales and use tax.
In regard to the second issue, we find that, as far as gold and silver are concerned, the operation of the sales and use tax laws and regulations is not an improper intrusion on the Federal government’s authority nor does it confilct or interfere with federal regulation of monetary matters.
The Association advances three basic areas where it contends the state improperly intrudes on the federal government’s plenary power over monetary matters.
The first two areas are closely related in that both concern the federal government’s supremacy in matters involving imports and exports.
The Association contends that Alabama’s sales tax on gold and silver bullion, coins, etc.’ improperly interferes with foreign commerce and further that it violates the General Agreement on Tariffs and Trade of which the United States is a subscriber.
Both of these areas are matters involving essentially “imports and exports.” Where commerce with foreign nations is involved, imported goods or products can be taxed by the states when the imported product has lost its distinctive character as an import. Low v. Austin, 13 Wall. 29, 80 U.S. 29, 20 L.Ed. 517 (1871). In the present case there is no evidence that the State of Alabama has sought to tax any foreign gold or silver before it has lost “its distinctive character as an import.” The statutes and regulation only levy a tax on these items after the coins have entered Alabama and become part of domestic commerce.
The General Agreement on Tariffs and Trade, 61 Stat. A 11 (1947), prohibits discriminatory treatment of exports and imports between the signatory nations. The Association contends that Alabama is discriminating against foreign coins imported into the United States in that it taxes the sale of these coins but not the sale of gold medallions minted and sold by the United States. This contention is without merit.
Initially, gold medallions minted and sold by the United States are not subject to state sales tax. It is axiomatic that the states cannot impose a sales tax on sales by or to the United States Government. U.S. Const, art. VI; Code of Alabama § 40-23-4(17) (1975). The same is true of foreign coins while they still' retain their distinctive character as imported goods. Low v. Austin, 13 Wall. 29, 80 U.S. 29, 20 L.Ed. 517 (1871). However, subsequent sales of the United States medallions in which the United States is not a party are taxed by the state if all other conditions of the statute are met. Likewise, the sale of foreign coins is taxed once they have entered domestic commerce and are no longer “imports” as indicated previously. Thus, there is no discrimination and no violation of the General Agreement on Tariffs and Trade.
More to the point, the General Agreement on Tariffs and Trade covers “customs, duties, charges of any kind related to importation/exportation or international transfers of payments connected to imports/exports.” (Emphasis supplied.) As discussed above, the Alabama sales tax is not related to imports/exports. Therefore, the sales tax does not violate the General Agreement on Tariffs and Trade. In fact, it appears that the General Agreement on Tariffs and Trade is not at all applicable to this matter.
Lastly, the Association contends that the state’s sales tax improperly intrudes on Congress’s power to “coin money, regulate the value thereof, and of foreign coin_” U.S. Const, art. I, § 8. Essentially, the question we are concerned with is whether the sales tax imposed by Alabama on foreign and domestic gold coins regulates the value of money. We *871 hold that a sales tax in this particular instance does not regulate money.
Section 5154, 31 U.S.C.A. (West 1983), gives the states authority to tax United States coins and currency as money on hand or on deposit. Furthermore, whether foreign or domestic coins are concerned, the sale is the transaction being taxed, not the money. We fail to see how this regulates the value of money. It certainly affects the price of money or coins as they are bought and sold; however, this does not mean that the value is being changed.
In view of the foregoing, we find that gold and silver used for investment and numismatic purposes within this state are tangible personal property subject to sales and use tax in Alabama. Furthermore, such a tax is a proper exercise of state power that does not interfere with or intrude on federal authority. The pertinent statutes and regulation seek only to tax sales within the state or items brought into the state for investment or numismatic purposes.
This case is due to be and is affirmed.
AFFIRMED.
All the Judges concur.