INGRAM, Judge.
By a final assessment entered on February 28, 1985, the Alabama Department of Revenue (Department) assessed Midstream Fuel Service, Inc. (Midstream), with additional sales taxes, interest, and penalties totaling $550,776.44. Midstream paid the taxes and appealed the final assessment to the Circuit Court of Mobile County, pursuant to § 40-2-22, Code 1975. On April 8, 1987, the circuit court entered a final decree determining that certain of those sales taxes previously paid by Midstream in the amount of $14,855.34 were properly due and, further, that $506,106.01 of taxes assessed and paid were not due and should be refunded to Midstream. The Department *77 filed a notice of appeal on May 18, 1987. Midstream cross-appeals.
The paramount issue is whether § 40-23-4(a)(10), Code 1975, requires an apportionment of the exemption from sales tax on sales of fuel and supplies for use or consumption aboard ships and towing vessels plying the high seas or gulf intracoas-tal waterway engaged in interstate or foreign commerce when these craft come into the inland waterways of Alabama. An additional issue concerns whether Midstream met the burden of proof for its entitlement to the sales tax exemption on certain sales transactions to ships and towing vessels. The final issue concerns which ships and vessels qualify for the sales tax exemption as respects their engagement in either in-tercoastal trade or foreign commerce.
Midstream is a business engaged in selling diesel fuel, oils, and marine supplies. Midstream sells to vessels traveling in the Gulf of Mexico, the gulf intracoastal waterway running along the coastline of Florida, Alabama, Mississippi, Louisiana, and Texas, and the inland waterways of Alabama and other states. Midstream operates primarily from its facilities located on the Mobile River in the city of Mobile.
The sales transactions at issue in this case may be grouped into certain specific categories. Midstream and the Department agreed to these categories in a stipulation of facts.
I.
The first category involves sales to vessels in trade or commerce between Alabama ports and ports in other states or ports in foreign countries. These sales, Midstream contended and the circuit court agreed, are exempt from sales tax under § 40-23-4(a)(10), which reads as follows:
“The gross proceeds from the sale or sales of fuel and supplies for use or consumption aboard ships and towing vessels plying the high seas or gulf intra-coastal waterway either in intercoastal trade between ports in the state of Alabama and ports in other states of the United States or its possessions or in foreign commerce between ports in the state of Alabama and ports in foreign countries; provided, that nothing in this division shall be construed to exempt or exclude from the measure of the tax herein levied the gross proceeds of sale or sales of material and supplies to any person for use in fulfilling a contract for the painting, repair or reconditioning of vessels, barges, ships and other watercraft of 50 tons burden or less.”
The Department argues that Midstream’s transactions in question did not meet the necessary element contained in that section requiring that the ship or towing vessel making a purchase be engaged in “plying the high seas or gulf intracoastal waterway.” The Department maintains that, due to this requirement, a proper interpretation of the exemption requires an apportionment of a sales transaction so that the sales of fuel and supplies consumed on Alabama inland waters are not exempted from sales tax. Thus, argues the Department, only that portion of fuel and supplies consumed outside of Alabama inland waters, “plying the high seas or gulf intra-coastal waterway,” may be exempted.
We find no merit in the Department’s contention that the statute calls for an apportionment of sales taxes. The trial court succinctly and accurately stated:
“The Department’s argument that § 40-23-4(a)(10) requires the taxation of fuel and supplies consumed solely upon Alabama territorial waters and the exemption of fuel and supplies consumed entirely outside of the territorial jurisdiction of the State of Alabama is just not borne out by the express language of the exemption statute. The exemption does not provide for a pro rata exemption; it establishes a full exemption when the necessary elements are all present....”
These elements are as follows: (1) a sale of fuel or supplies (2) for use or consumption aboard ships or towing vessels (3) plying the high seas or intracoastal waterways (4) in intercoastal trade between ports in Alabama and ports in other states or (5) in foreign commerce between ports in Alabama and foreign countries.
*78 The language of the statute seems clear that the exemption requirement, once met by a ship or towing vessel for a particular trip or voyage, is not subject to an apportionment for use of the Alabama inland waterways during a part of that trip or voyage.
The Department contends that its Sales and Use Tax Regulation S8-011, which states in pertinent part at paragraph 4,
“This exemption does not apply to sales of fuel and supplies used or consumed aboard any tug or vessel plying the rivers of this state,”
means “that the benefit of the exemption applies only to that portion of the trip where the ship or vessel is not plying the rivers of this state” and that this administrative construction is due to be given great weight. This regulation, however, makes no mention of an apportionment. In fact, and to the contrary, the Department’s brief at page five states that “[i]t is unfortunate that the regulation is not more clear and did not explain that an apportionment of the fuel and supplies was required.” So, paragraph four of Rule S8-011 comes here with no considerable administrative construction weight. This court is more inclined to the guidance of State v. Advertiser Co., 257 Ala. 423, 59 So.2d 576 (1952), where our Supreme Court, in construing an exemption to the use tax, made the following statement:
“ ‘While exemption clauses are, of course, to be construed most strongly against the taxpayer, they are not to be so strictly construed as to defeat or destroy the intent and pujóse of the enactment, and no strained construction will be given them that will effect that end, State v. Wertheimer Bag Co., 253 Ala. 124, 127, 43 So.2d 824, and it has been said that “If the act expresses the intent to exempt certain property, judicial Construction is not appropriate to defeat the exemption.” In re Bendheim’s Estate [100 Cal.App.2d 398], 223 P.2d 874.’”
257 Ala. at 427-428, 59 So.2d 576, 579.
II.
During the three-and-a-half-year period of sales covered by this audit (January 1, 1980-July 31, 1983), Midstream obtained a certificate from each ship or towing vessel owner or lawful agent (customer) at the time of the sales transaction, as required by the Department’s Rule S8-011 at paragraph five, which follows:
“(5) Any merchant claiming sales of property as exempt from tax by reason of being sold for use or consumption aboard ships as set out above must support his claim by his affidavit and certificate of the ship’s owner or his lawful agent that such property is sold for use or consumption aboard ships and towing vessels plying the high seas or gulf intra-coastal waterway either in intercoastal trade or foreign commerce, and that such property was delivered by the seller to the ship’s owner or his lawful agent and placed aboard ship for such use or consumption and not for other purposes.”
During the course of the audit, the Department requested Midstream to verify or substantiate the facts supporting the customer’s exemption claim and certificate. Midstream complied by obtaining this information from all customers which could be located. Where this accomplished retroaction supported the claim, the Department deleted those transactions from the audit. Where such information satisfied the Department and Midstream that error existed, Midstream paid the sales tax. None of those transactions is at issue here. Where the information furnished by the customers satisfied the Department, but not Midstream, that error existed, the tax on those sales is at issue here.
Midstream offered the testimony of its comptroller, Earl Jackson, that many former customers either could not be located, were out of business, or were bankrupt. Consequently, complete verification was a virtual impossibility. In support of the certificates, Greer Radcliff, vice president of Midstream, testified that he was operations manager for Midstream during the audited period, and as such, he was “on the river.” He knew the vessels which were fueled and supplied by Midstream. As a government certified tankerman, he was involved in the *79 everyday sales of fuel and supplies sold by Midstream. He listed by name a significant number of customers in this category, indicating that their respective ships and vessels were engaged in interstate trade or foreign commerce. No evidence was offered in contravention of his testimony or of the exemption certificates.
We agree with the trial court that Midstream complied with the duty imposed upon it by Rule S8-011 when it secured the exemption certificates at the time of the sales transaction and which were described in the stipulation of facts and Exhibit D thereto, and therefore Midstream is entitled to the sales tax exemption here.
III.
The final issue concerns which ships and vessels qualify for the sales tax exemption with respect to their individual engagement in either intercoastal trade or foreign commerce.
The first special situation concerns transactions involving the Diamond M Drilling Company. These transactions involve sales of fuel to be used or consumed aboard drilling rigs, vessels towing drilling rigs, and one vessel transporting supplies to a rig. These rigs were, after delivery of fuel by Midstream, towed by towing vessels from Mobile to waters offshore of Brazil for use in drilling for petroleum products. At issue in these transactions is again whether the sales of fuel by Midstream to Diamond M Drilling Company qualify for the exemption from State of Alabama sales tax under § 40-23-4(a)(10). The Department argued that these rigs were not “ships” for purposes of § 40-23-4(a)(10). The trial court, in its order, noted that under the federal maritime law, even a submersible drilling barge which was not self-propelled, as were the rigs in the case at hand, which were towed to operating locations by tugs, have been held to constitute a “vessel,” a term synonymous with “ship.” Guilbeau v. Falcon Seaboard Drilling Co., 215 F.Supp. 909 (E.D.La.1963). The Department also argues that the activities engaged in by the Diamond M Drilling Company were not “foreign commerce” within the meaning of § 40-23-4(a)(10). We agree with the trial court’s assessment that “commerce” connotes a broad meaning and covers even the transportation of one’s own goods across state and national boundaries. The next argument raised by the Department dealing with whether the Diamond M Sales are exempt concerns whether the vessels proceeded to a foreign country within the meaning of § 40-23-4(a)(10). The trial court held that a reasonable interpretation of the stipulation of facts is that the vessels did proceed to a port in a foreign country within the meaning of § 40-23-4(a)(10). The agreed upon facts repeatedly stated that the vessels were being towed from Mobile “to Brazil.” We thus agree with the trial court’s finding that the sales to Diamond M Drilling Company are exempt from sales tax by reason of the exemption in § 40-23-4(a)(10).
The next category of sales in question involves sales to Petromar Marine, which had several offshore oil supply vessels that were used to transport men and materials between the shore and offshore rigs or between the offshore rigs. The issue here is whether these vessels were engaged in “foreign commerce” under the exemption statute. We agree with the trial court’s order stating that the transportation of offshore supply vessels with crews and supplies to a foreign port for the purpose of employing those vessels in foreign offshore oil fields constitutes engaging in “foreign commerce” under § 40-23-4(a)(10).
The next category of sales of fuel by Midstream on appeal presents the issue of whether sales of fuel to tugs pushing empty barges between Alabama ports and ports in sister states on their way to be reloaded are entitled to an exemption. We fail to see that, because the barges are empty, a different result would be reached in deciding whether the vessels were involved in “intercoastal trade” under the statute. We therefore affirm the trial court’s finding in favor of the exemption.
*80 We are satisfied that the trial court properly found that the transactions involving the Findley Towing Company and the Metz-ger Towing Company were due to be assessed sales taxes, as these sales did not meet the requirements for exemption set out in § 40-23-4(a)(10).
CROSS-APPEAL
Midstream has cross-appealed, arguing that the assessment by the Department of sales tax on Midstream’s sale of fuel and supplies to purchasers engaged in interstate commerce or foreign commerce unconstitutionally violates the commerce clause of the United States Constitution and, in certain transactions, unconstitutionally levies a duty violative of the import-export clause of the United States Constitution.
We are not of the opinion that the application of an Alabama sales tax constitutes an impermissible burden on interstate and foreign commerce. Although interstate commerce may constitutionally be required to pay its own way, Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), the sales tax imposed upon fuel sold by Midstream within Alabama does not impermissibly burden interstate commerce. As the circuit court stated:
“[T]he Court is concerned with the sales transaction itself and not the use or consumption of the fuel and supplies consumed except as to a determination of qualification for the above referenced exemption. The sales and use tax imposed upon the sale of fuel and supplies by Midstream were completed entirely within the State of Alabama and are not transactions in interstate commerce.”
Sales which are entirely completed within a state are not transactions in interstate commerce. Rite Tile Co. v. State, 278 Ala. 100, 176 So.2d 31 (1961). Thus, there is no violation of the commerce clause.
As to Midstream’s argument that the application of sales taxes to certain transactions constitutes a violation of the import-export clause, we find no merit. The sales taxes assessed against transactions in this case are not taxes upon imports or exports. No sales tax was assessed upon any cargo or trade items of these ships and towing vessels. The fuel and supplies consumed by the ships and towing vessels were certainly not imports or exports. Thus it is our opinion that the trial court properly determined that the sales taxes assessed do not violate the United States Constitution.
This case is affirmed.
AFFIRMED.
BRADLEY, P.J., and HOLMES, J., concur.