Elizabeth H. Plummer died in Montgomery, Alabama, on December 29, 1989. Her 10-page will was admitted to probate on January 25, 1990. Under the terms of Mrs. Plummer's will, her "tangible personal property" was bequeathed to her brother, Paul Higgins, and a sister-in-law, Adelaide (even though Paul and Adelaide are not husband and wife, we shall refer to them as the "Higginses"). The residuary clause left the remainder of the estate "including real, personal and mixed properties" to eight named charitable beneficiaries.
The executors of the will, Jo Prince and First Alabama Bank, filed a complaint for a declaratory judgment, seeking a construction of the will and instructions pursuant to §6-6-225, Ala. Code 1975, to resolve the issue of whether the 240 gold coins[1] found in the decedent's safety deposit box should be distributed to the Higginses or to the various residuary beneficiaries under the terms of the will. The executors took the position that the gold coins should pass pursuant to the residuary clause of the will, while the Higginses took the position that the coins were tangible personal property.
The trial court ruled that the gold coins were tangible personal property and therefore should be distributed to the Higginses under the terms of the will. The executors appeal.[2] We affirm.
The decedent bequeathed items of tangible personal property by Item III of her will. In Item III, paragraphs (a) through (s), she bequeathed items of personal property to specific individuals, making numerous, significant cash bequests to certain individuals. She then left all of her remaining "tangible personal property" to the Higginses in paragraph (t), as follows:
 "All of the remaining tangible personal property which I may own at the time of my death, not otherwise specifically bequeathed above, including any household furniture and furnishings, books, pictures, jewelry, art objects, club memberships, wearing apparel and other articles of household or personal use or ornament, together with any insurance on such specific items, but excluding any automobile or automobiles, shall be transferred and distributed in two substantially equal shares as follows:
 "(1) One such equal share shall be transferred and distributed to my brother, Dr. Paul Higgins.
 "(2) One such equal share shall be distributed to my sister-in-law, Adelaide Bostelman Higgins."
(R. 26). The residuary clause of the will, Item V, provides in pertinent part:
 "I give, devise, bequeath and appoint all of the rest, residue and remainder of my estate, including real, personal and mixed properties, wheresoever situated to [eight named charitable beneficiaries in specified percentages]."
(R. 27.)
In the construction of a will, the cardinal rule is to ascertain the testator's intent. City National Bank ofBirmingham v. Andrews, 355 So.2d 341 (Ala. 1978); Gafford v.Kirby, 512 So.2d 1356, 1360 (Ala. 1987). "We have repeatedly referred to this intent as the polestar that guides us." Id., citing Wiley v. Murphree, 228 Ala. 64, 151 So. 869 (1933). Therefore, the question before this Court is whether the trial court properly determined that the decedent intended the gold coins to pass *Page 1219 
under the bequest of her "remaining tangible personal property" or to pass as part of her residuary estate.
The bequest to the Higginses in Item III gives them "[a]ll of the remaining tangible personal property which I may own at the time of my death, not otherwise specifically bequeathed above, including. . . ." It is clear on the face of the will that the testatrix intended that the Higginses receive the remaining tangible personal property of whatever nature, with the singular exception of any automobiles she might own at her death. The word "including" does not restrict the preceding general language, but is used as a term of enlargement. As we said in Sims v. Moore, 288 Ala. 630, 264 So.2d 484 (1972):
 "Contrary to this argument 'including' is not to be regarded as limitational or restrictive, but merely as a particular specification of something to be included or to constitute a part of some other thing, that is, part of 'all of my personal belongings.' Achelis v. Musgrove, 212 Ala. 47, 50, 101 So. 670. 'Including' is not a word of limitation, rather it is a word of enlargement, and in ordinary significance also may imply that something else has been given beyond the general language which precedes it."
288 Ala. at 635, 264 So.2d at 487.
"Tangible personal property" is not an ambiguous term. "Tangible property" has a specific legal definition:
 "TANGIBLE PROPERTY. That which may be felt or touched, and is necessarily corporeal, although it may be either real or personal."
Black's Law Dictionary 1305 (5th ed. 1979). "Tangible property" has been defined and distinquished from "intangible property" as follows:
 "Tangible property is that which may be felt or touched; such property as may be seen, weighed, measured, and estimated by the physical senses; that which is visible and corporeal; having substance and body as contrasted with incorporeal property rights such as franchises, choses in action, copyrights, the circulation of a newspaper, annuities and the like. Tangible property must necessarily be corporeal, but it may be either real or personal.
 "Intangible property is property which has no intrinsic and marketable value, but is merely the representative or evidence of value, such as certificates of stock, bonds, promissory notes, and franchises. Intangible property is quite different in nature from corporeal property, and there is an obvious distinction between tangible and intangible property. Intangible property is held secretly; that is, it cannot be readily located, and there is no method by which its existence or ownership can be ascertained in the state of its situs, except, perhaps, in the case of mortgages or shares of stock. The value of intangible property is not easily ascertained."
73 C.J.S. Property § 15 at 184 (1983) (footnotes omitted).
"Tangible personal property" (as that phrase is used in a statute making certain items subject to sales and use tax) has been construed by the Court of Civil Appeals of Alabama to include gold and silver coins bought and sold for investment and numismatic purposes:
 "The Supreme Court of Alabama has defined tangible personal property as 'something that can be seen, felt, handled, [and] sold commercially and [that] has physical substance.' State v. Advertiser Co., 257 Ala. 423, 59 So.2d 576, 580
(1952).
 "The evidence in the present case is that silver bullion consists of sacks of solid silver U.S. coins sold by weight, not by the face value of the coins. The price is determined by applying the price per ounce of silver at the time of the sale to the weight of the bag.
 "The gold and silver coins are sold as individual coins rather than by weight. However, a particular coin's value is determined by the amount of the metal in the coin and the fluctuating price of sold and silver in relation to the value of the U.S. dollar.
 "Generally, these coins do not circulate as currency but are sold like other commodities, *Page 1220 
such as coal, with the idea that the coin's value will increase. Furthermore, we are unaware of any authority in Alabama that holds coins or money are not tangible personal property. Put another way, whether the coins are considered as commodities or money, either would be tangible personal property."
Association of Alabama Professional Numismatists, Inc. v.Eagerton, 455 So.2d 867, 869-870 (Ala.Civ.App. 1984).
We find the reasoning in In re Macfarlane's Estate,313 Pa. Super. 397, 459 A.2d 1289 (1983), persuasive. That case involved the interpretation of a provision of a will leaving all "tangible personal property" to the testator's wife. A residuary clause established a trust. In holding that certain gold and silver coins owned by the testator had passed to the wife as tangible personal property, rather than becoming part of the residuary estate, the Pennsylvania court said:
 "Upon an analysis of the [language appearing within the] four corners of the testator's will, we discern no ambiguity. The will utilizes the technical words 'tangible personal property,' which words have a specific legal definition, as previously set forth. The gold and silver coins clearly are tangible property, in that they can be felt or touched. Also, because the coins have both intrinsic and marketable value, in and of themselves, they cannot be considered intangible property, without more. The coins are more than the mere representation or evidence of value, as opposed to stock certificates or paper currency."
459 A.2d at 1292.
The case before us presents an almost identical situation. Upon an analysis of the will before us, we find no ambiguity. It utilizes the technical words "tangible personal property." Clearly, the gold coins are "tangible personal property" and thus were meant to be distributed under the terms of Item III, whether bought for investment purposes, as the executors argue they were, or not.
Because we find no ambiguity in the will, we reject the argument of the executors that the doctrine of ejusdem generis
should be applied to Item III(t) of the will to restrict the "tangible personal property" bequeathed to those articles of household or personal use or ornament. See Merchants NationalBank of Mobile v. Hubbard, 220 Ala. 372, 125 So. 335 (1929);Martin v. First Nat'l Bank of Mobile, 412 So.2d 250, 253 (Ala. 1982).
The executors cite us to Matter of Brecklein's Estate,6 Kan. App. 2d 1001, 637 P.2d 444 (1981), and In re Neefus' Will, 110 N.Y.S.2d 584 (Sur.Ct. 1952). In these cases, the Court of Appeals of Kansas and the Surrogate's Court of Westchester County, New York, held that gold coins did not pass as items of a testator's personal effects or belongings. These cases are not persuasive, because neither of them involves the technical term "tangible personal property." Both involve the interpretation of the testator's intent in leaving "belongings" or "personal effects."
For the reasons stated herein, the judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, ADAMS and KENNEDY, JJ., concur.
[1] Consisting of 57 Kruggerands and 183 Canadian maple leaf coins.
[2] Two residuary beneficiaries, Huntingdon College and St. Margaret's Foundation, Inc., have filed a joint amicus curiae brief.