GARZA, Senior Circuit Judge:
 

 Perkins sued Hartford claiming bad faith and breach of contract in refusing to defend him in earlier litigation with Watson. The district judge granted summary judgment in favor of Hartford on the bad faith claim and denied Perkins’s motion for summary judgment on the contract claim. Perkins now appeals the summary judgment against him on the bad faith claim. Finding a genuine issue of material fact we reverse and remand the case for trial.
 

 Prior Proceedings
 

 Perkins and his sole proprietorship, Griffice Printing Company, (hereinafter “Perkins”), purchased a “comprehensive business liability” insurance policy from The Hartford Insurance Group (hereinafter “Hartford”). In May of 1988, a lawsuit was filed against Perkins and his printing company as a result of several art prints which Perkins’s grand nephew had distributed without Perkins’s or the artist’s permission. Perkins forwarded the complaint to Hartford which compared it with the insurance policy. After comparison, Hartford concluded it had no duty to defend and informed Perkins he would have to provide his own defense.
 

 Perkins eventually settled the suit with the artist for $500. Subsequently, he filed suit against Hartford for breach of contract and bad faith for refusing to defend him in the prior suit with the artist. Both sides filed for summary judgment. Hartford sought and was granted summary judgment on the bad faith claim. Perkins sought and was denied summary judgment on the breach of contract claim. Notice of appeal was timely filed and the case is now before us.
 

 Facts
 

 This case stems from a dispute which arose between Perkins and Deena Watson, one of his former customers. Ms. Watson, an artist, hired Perkins in January of 1988 to make prints of an original Mardi Gras poster which Watson had designed and painted for sale in the Mobile, Alabama area. Ms. Watson intended to produce and sell only 200 hand-signed and numbered copies of her poster. As per their agreement, Perkins made 200 first quality prints of Ms. Watson’s painting and delivered them to her shortly before Mardi Gras in February of 1988. After she began selling her prints, Ms. Watson learned that copies of her print were being distributed without her consent. Ms. Watson was informed that the daughter of a co-worker had been given a copy of Ms. Watson’s print by “a little boy at school”. That “little boy” was Jake Loper, Perkins’s grand nephew. Jake Loper’s father, Bruce Loper, had spent some time at his uncle’s
 
 [2]
 
 printing shop shortly after Perkins completed making the Watson prints. Bruce Loper came into possession of some discarded copies of Watson’s print while removing scrap paper from the trash bins at Griffice Printing.
 
 [3]
 
 Although he did not have Perkins’s permission to take the discarded prints, Loper assumed that “no harm could come from saving this paper from the trash man.” Unfortunately, Loper’s son, Jake, took some of the posters and gave them to some of his classmates at school. When Watson learned of this, she filed suit against Perkins.
 

 Perkins’s policy with Hartford provided “Comprehensive Business Liability Coverages.” Under the terms of the policy, Hartford contracted to “pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, property damage, personal, injury, or advertis
 
 *1390
 
 ing injury caused by an occurrence to which this insurance applies.” (all emphasis in original unless otherwise noted). The term “occurrence” is defined by the policy “with respect to bodily injury or property damage” as “an accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.” “Bodily injury” is defined by the policy as “bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.” “Property damage” is defined as “(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss is caused by an occurrence during the policy period.” Under the express terms of the policy, Hartford had “the right and duty to defend any claim or suit against the insured seeking damages payable under this policy, even though the allegations of the suit may be groundless, false, or fraudulent.”
 

 Watson’s suit against Perkins contained three counts. Count One of the complaint alleged a “breach of a confidential relationship” and simply stated that Perkins breached “a confidential relationship with Plaintiff” and prayed for damages in the amount of $100,000. Count Two of the complaint, captioned “False and Fraudulent Representations”, alleged:
 

 [T]he defendant represented to the plaintiff that he would print no more than 200 numbered prints which were to be distributed solely by the Plaintiff....
 

 The representations made by Defendant were false and Defendant knew or ought to have known that they were false, and as a proximate result thereof, the Plaintiff was damaged.
 

 Count Three of the complaint, captioned simply “FRAUD”, alleged:
 

 [T]he defendant represented to the Plaintiff that he would print no more than 200 numbered prints which were to be distributed solely by Plaintiff.... That the above representation made by defendant was false and that Defendant knew it was false.
 

 Counts Two and Three also demanded damages in the amount of $100,000 each.
 

 Upon receipt of the suit papers, Mr. Perkins timely turned the papers over to his local insurance agent, and the papers were forwarded to the local claims office. Robert Walters, Hartford’s claims manager in Mobile, was the primary employee of Hartford responsible for the Watson complaint and for making the initial determination of whether coverage existed. Walters, relying on the allegations in the complaint, wrote to Perkins to advise him Hartford would not provide a defense to the Watson complaint. Walters gave two grounds for the refusal to defend: (1) “No occurrence regarding property damage or bodily injury has been named in the [Watson] complaint” and (2) the Watson complaint alleged only intentional acts by Perkins (which were not covered by the policy), not negligent acts (which were covered).
 

 At Walters’s suggestion, Perkins hired an attorney at his own expense to defend him in the Watson action. Perkins’s attorney asked Hartford to reconsider their previous decision and pointed out sections of Perkins’s policy which indicated Hartford should defend the action. This attorney also advised Hartford it appeared their decision was made without any investigation of the facts surrounding the incident.
 

 Upon receipt of the letter of Perkins’s attorney, Walters wrote to Phillip Murphy, the Division Chief Supervisor of Claims in Hartford’s home office in Hartford, Connecticut. Walters’s letter indicated that in retrospect, Walters was apprehensive regarding further denial of coverage. The letter to Murphy stated an inference of negligence could be drawn from Perkins’s acts and it was difficult to determine what allegations the plaintiff, Watson, was making because her complaint was vague. Whether the act was intentional or negli
 
 *1391
 
 gent was also a debatable issue according to the Murphy letter. Other correspondence between Walters and Hartford’s counsel indicated Walters’s apprehension
 
 [4]
 
 in denying coverage.
 

 Subsequent to these events, the senior claims superintendent in Hartford’s home office, instructed Walters to maintain the denial of coverage. This letter stated, however, “I have done research on this in Alabama and there is no requirement that we investigate before disclaimer, though we might do so at our peril.” Perkins was then informed by letter that “the allegations of the complaint do not plead into the policy definitions of occurrence, bodily injury, property damage, personal injury, or advertising injury.” Perkins attorney by letter again advised Hartford that their failure to investigate was tantamount to a bad faith refusal to ascertain whether coverage existed. The letter also stated that any diminution in value of Watson’s prints would fall under the property damage provision of the policy. Further review of Perkins’s file by a claims manager in the Birmingham office indicated Hartford may have been premature in denying coverage without an investigation and the benefit of the insured’s explanation of the occurrence. In response to this later review, a representative of Hartford’s claims department in the main office suggested a declaratory judgment action be filed to determine Hartford’s obligations, if any. No declaratory judgment action was ever filed, however.
 

 The Deena Watson suit was settled for $500. Perkins agreed to pay Ms. Watson this sum. Over $3,500 in legal and deposition fees were incurred in defending the suit, however.
 

 Duty to
 
 investigate?
 
 [5]
 

 The threshold inquiry in this case is whether Hartford had a duty to investigate the facts upon receipt of the Watson complaint or whether they could simply rely on the allegations in the complaint in assessing their duty to defend. The evidence before us clearly indicates the Watson complaint was vague and poorly drafted. The correspondence within Hartford showed the insurer was uncertain of its own position. Alabama law does not provide a direct answer on this issue, but the law is clear enough so that we may make an educated
 
 Erie
 
 guess. See
 
 Erie R. Co. v. Tompkins,
 
 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
 

 Generally, the obligation of the insurer to defend its insured is determined by the allegations of the third-party complaint.
 
 Ladner & Co., Inc. v. Southern Guaranty Ins.,
 
 347 So.2d 100, 102 (Ala.1977). When the insurer is uncertain what the complaint of the third-party is alleging, however, it has a duty to investigate the facts surrounding the incident in order to assess its duty to defend.
 
 See Pacific Indem. Co. v. Run-A-Ford Co.,
 
 276 Ala. 311, 161 So.2d 789, 795 (1964).
 
 See also Ladner & Co., Inc.,
 
 347 So.2d at 103 (quoting this language from
 
 Run-A-Ford Co.).
 
 Hartford contends
 
 Pacific Indemnity
 
 is not applicable to the case at bar because it is a declaratory judgment case. This argument is meritless. Insurance policies are liberally construed in favor of the insured.
 
 Id.
 
 The insurance company drafts the policy and any “doubt as to whether or not the complaint against the insured alleges a liability under the policy ... must be resolved in the insured’s favor.” 14 Couch on Insurance 2d (Rev. ed.) § 51.49 (1982).
 
 See Run-A-Ford Co.,
 
 161 So.2d at 795. The proper course of action for Hartford would of course to have filed a declaratory judgment action
 
 [6]
 
 to determine their obli
 
 *1392
 
 gations, if any, under the policy. Since they did not do so, the uncertainty of the Watson complaint obligates them to at least investigate the incident or to defend the action and reserve the right to contest coverage later, based on facts developed at trial on the merits.
 

 Bad Faith?
 

 Since Hartford had a duty to investigate under the facts of this case and did not fulfill this duty, the next inquiry is whether this breach of duty raises a genuine issue of material fact regarding bad faith. The Alabama cases do not instruct us directly on this point, but the bad faith cases provide enough guidance for the disposition of this case. The bad faith cases dealing with the refusal of payment are analogous and applicable in the case at bar. These cases tell us that a plaintiff in a bad faith case may prevail “by showing that the insurer intentionally failed to investigate the claim to determine whether there was a legitimate reason for refusing payment.”
 
 [7]
 

 Jones v. Alabama Farm Bureau Mut. Casualty Co.,
 
 507 So.2d 396, 399 (Ala.1986).
 
 See also United Servs. Auto. Ass’n v. Wade,
 
 544 So.2d 906, 913-14 (Ala.1989) (discussing why the trial court did not err in holding that the insurer’s investigation was incomplete);
 
 Chavers v. National Sec. Fire & Casualty Co.,
 
 405 So.2d 1, 7 (Ala.1981) (listing the two prongs to a bad faith action). Reckless indifference to facts or proof submitted by the insured is evidence of bad faith.
 
 Jones
 
 507 So.2d at 399-400.
 
 See also Gulf Atl. Life Ins. Co. v. Barnes,
 
 405 So.2d 916, 924 (Ala.1981) (discussing evidence of bad faith in a refusal to investigate case).
 

 In this case there is at least, perhaps more than, a genuine issue of material fact regarding the bad faith of Hartford.
 
 See
 
 Fed.R.Civ.P. 56(c). Looking at the evidence properly before us, no one ever inquired of Perkins as to the facts of the Watson occurrence. This alone probably would have led Hartford to provide a defense for Perkins. The prints were not destroyed before being placed in the trash behind the shop. This can be seen as an inference of negligence. This work could have been recovered by anyone and resold. Such a resale, similar to the give away by Jake Loper, would result in a diminution in value of the signed prints which were acquired from Watson. These acts indicate a negligent damage to tangible property. This possibly is the type of occurrence which the policy was intended to cover. Since Hartford made no investigation, however, they did not have the benefit of this information at the time they denied coverage.
 

 Conclusion
 

 Because of the vague complaint, Hartford had a duty to investigate further to define their obligations, if any. Their failure to further investigate is some evidence of bad faith. Whether there is enough evidence for the jury to find bad faith we do not decide. Looking at the evidence in the light most favorable to Perkins, there was enough to withstand summary judgment, however. Accordingly, the judgment of the lower court is REVERSED and the case is REMANDED for a jury trial on the merits.
 

 [2]
 

 . Perkins is Bruce Loper’s uncle.
 

 [3]
 

 .In order to produce 200 first-quality prints of a multi-colored painting, Perkins had to make at least 600 prints. The additional 400 prints were made to compensate for flaws which inevitably take place during the multi-stage coloring process.
 

 [4]
 

 . In a letter from Walters to a Hartford attorney in Birmingham, Walters concluded: "The more I look at this file, the more I feel there is probable coverage as outlined above."
 

 [5]
 

 . We need not
 
 decide
 
 whether the facts of the Watson case fit within the terms of the policy to dispose of this matter. Under these facts, Hartford had a duty to investigate and breached its duty.
 

 [6]
 

 .Hartford, not Perkins, would be the proper party to file the declaratory judgment action. Although either party could have brought this action, the insured buys insurance in order to protect himself. This is the purpose of these policies. When an incident such as this occurs, the insured should be given the benefit of the doubt on coverage and the insurer file the declaratory action if desired. It is doubtful
 
 *1392
 
 whether most insureds know the option of a declaratory judgment proceeding is available. Further, the evidence indicates someone at Hartford thought a declaratory judgment action should be filed at the time the decision to deny coverage was being made.
 

 [7]
 

 . Just as in
 
 United Servs. Auto. Ass’n v. Wade,
 
 544 So.2d 906, 913 n. 1 (Ala.1989), "[a] discussion of all of the elements of bad faith is not necessary for a determination in this case."