United States District Judge Truman Hobbs has certified to this Court these questions, pursuant to Rule 18, Ala.R.App.P:
 "[1] Under the applicable policies of American States [Insurance Company], does it have a duty to defend the action brought by the Bergers in the Circuit Court of Montgomery County, Alabama, and,
 [2] if so, does it have a duty to indemnify if the wrongful conduct of Martin was innocent, reckless, negligent, or wanton rather than intentional?"
These questions call for us to consider whether American States Insurance Company, under the terms of its "business owner's policy" and/or its "commercial general liability policy," is under a duty to defend or indemnify its insureds in a civil action against its insureds alleging that the insureds caused the plaintiffs' security instruments and other investments to lose all value.
 Background
This action originates from the financial collapse of Donald M. Martin and the real estate businesses that he controlled — American Homes Realty, American Homes Realty, Inc., and Union Mortgage, Inc. Murray J. Berger and Roberta S. Berger, investors in these businesses, began investing money in Martin's businesses in the late 1970's. They invested for themselves and on behalf of their family members; they and the family members are the plaintiffs in the underlying state lawsuit that led to the action filed in the federal district court. In return, they received from Martin's businesses security instruments, usually a second mortgage, or an assignment of a mortgage, relating to real estate parcels located in Montgomery County. As to each transaction, the Bergers were to be repaid principal and interest on a monthly basis, except for the very last transaction. The Bergers say that they were informed on many occasions during 1987, 1988, 1989, and 1990 that their investments were safe and were properly secured and that all monies due would be collected by Martin's businesses and remitted to them. Sometime in early to mid-1990 all payments from Martin, or his businesses, ceased. After that point, the Bergers claim, their investments were lost and their second mortgages were probably worthless.
On January 8, 1993, the Bergers sued Martin, individually and d/b/a/ American Homes Realty; American Homes Realty, *Page 247 
Inc.; and Union Mortgage, Inc., in the Circuit Court of Montgomery County, alleging that they had deposited money with Martin over a period of years for which Martin gave them documents that represented that the Bergers had a security interest in realty in Montgomery County, Alabama. The state court complaint alleged that Martin had negligently, recklessly, or wantonly invested the Bergers' funds in a manner that exposed their investments and security instruments to unsafe financial conditions, resulting in the ultimate loss of their investments. The Bergers' complaint also alleged that Martin's actions included false and reckless misrepresentations that led to the loss of their investment. Each count in the Bergers' complaint included a claim for mental anguish.
American States Insurance Company provided business owner's and commercial general liability insurance to Martin and the company defendants named in the Montgomery County lawsuit. The policies provided coverage from August 1987 until the policies were canceled for lack of premium payments on October 6, 1989 (as to the commercial general liability policy) and November 6, 1989 (as to the business owner's policy).
On June 25, 1993, American States brought a diversity action against Martin and the Bergers in the United States District Court for the Middle District of Alabama, seeking a judgment declaring that, under the policy definitions of "property damage" and "bodily injury," it had no duty to provide coverage or a defense in the civil action brought by the Bergers in Montgomery County. American States also contended that Martin's actions were not an "occurrence" as defined by either policy.[1] Martin did not answer, and a default judgment was entered against him individually and d/b/a American Homes Realty and against American Homes Realty, Inc., and Union Mortgage, Inc. The only remaining defendants, the Bergers, answered and filed a counterclaim for coverage. Both parties thereafter moved for a summary judgment.
Before ruling on the summary judgment motions, Judge Hobbs certified the two questions to this Court.
 Property Damage
An insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint about what gave rise to the cause of action against the insured. American States Ins. Co. v.Cooper, 518 So.2d 708 (Ala. 1987). The contract shall be construed liberally in favor of the insured and strictly against the insurer. Tyler v. Insurance Co. of North America,331 So.2d 641 (Ala. 1976). Exclusions are to be interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company that drafted and issued the policy. AllianceIns. Co. v. Reynolds, 494 So.2d 609 (Ala. 1986); Employers Ins.Co. of Alabama v. Jeff Gin Co., 378 So.2d 693 (Ala. 1979).
The commercial general liability insurance policy defines "property damage" as:
 "a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
 "b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the 'occurrence' that caused it."
(Emphasis added.) That policy defines "occurrence" with respect to property damage as:
 "[A]n accident, including continuous or repeated exposure to substantially the same general harmful conditions."
"Property damage" is defined in the business owner's policy as follows:
 "(a) physical injury to or destruction of tangible property, which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or *Page 248 
 "(b) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."
(Emphasis added.) "Occurrence" is defined in that policy as:
 "[A]n accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured. . . ."
The Bergers aver in their state complaint that their security instruments and "properties" were exposed over a long period of time to unsafe financial conditions and that that fact caused the ultimate loss of their investments. The Bergers also aver that Martin continuously assured them during 1987, 1988, 1989, and 1990 that their investments were secure when, in fact, the Bergers say, they were not. The Bergers claim that they relied on these representations to their detriment, saying that their reliance caused them to invest more money with Martin and to refrain from taking any action to have the money that they invested with Martin returned. The Bergers allege that Martin's acts constituted a pattern of exposure to harmful conditions that is covered within the "occurrence" definition in the commercial general liability policy, which states that an "occurrence" will include "continuous or repeated exposure to substantially the same general harmful conditions"; and they contend that it is covered likewise under the business owner's policy definition of "occurrence," which defines "occurrence" as "continuous or repeated exposure to conditions." As a result of the alleged occurrences, the Bergers contend that they suffered property damage within the coverage of each policy.
Without deciding whether Martin's alleged exposure of the Berger's money to unsafe financial conditions, or his alleged misrepresentations, amount to an "occurrence" under either policy, we find it clear that no coverage for property damage under either policy exists unless the Bergers' complaint alleges potential damage resulting from physical injury totangible property.
In Prince v. Higgins, 572 So.2d 1217 (Ala. 1990), this Court accepted the following definitions of "tangible property" and "intangible property":
 " 'Tangible property is that which may be felt or touched; such property as may be seen, weighed, measured, and estimated by the physical senses; that which is visible and corporeal; having substance and body as contrasted with incorporeal property rights such as franchises, choses in action, copyrights, the circulation of a newspaper, annuities and the like. Tangible property must necessarily be corporeal, but it may be either real or personal.
 " 'Intangible property is property which has no intrinsic and marketable value, but is merely the representative or evidence of value, such as certificates of stock, bonds, promissory notes, and franchises. Intangible property is quite different in nature from corporeal property, and there is an obvious distinction between tangible property and intangible property. Intangible property is held secretly; that is, it cannot be readily located, and there is no method by which its existence or ownership can be ascertained in the state of its situs, except, perhaps, in the case of mortgages or shares of stock. The value of intangible property is not easily ascertained.' "
572 So.2d at 1219 (quoting 73 C.J.S. Property § 15 at 184 (1983)).
In this context, tangible property (like real estate) is property that is capable of being handled, touched, or physically possessed. Purely economic losses are not included in this definition. Oxford Lumber Co. v. Lumbermen's MutualInsurance Co., 472 So.2d 973 (Ala. 1985) (employee's claim for insured's failure to provide medical benefits not covered). See also, Keating v. National Union Fire Insurance Co. ofPittsburgh, 995 F.2d 154 (9th Cir. 1993) (economic loss is not damage or injury to tangible property covered by a comprehensive general liability policy); Allstate Ins. Co. v.Russo, 829 F. Supp. 24 (D.R.I. 1993) (lost investments and lost deposits not tangible property); Graber v. State Farm Fire Cas. Co., 244 Mont. 265, 797 P.2d 214 (1990) (lost business and injury to reputation and goodwill are not damage to tangible property under a business *Page 249 
owner's policy); Travelers Indemnity Co. v. State, 140 Ariz. 194,680 P.2d 1255 (Ariz.App. 1984) (loss of investment represented by an investment certificate not a loss of tangible property); L. Ray Packing Co. v. Commercial Union InsuranceCo., 469 A.2d 832 (Me. 1983) (antitrust action claiming loss of profits and financial interests resulting from insured's alleged price-fixing scheme not covered).
The complaint in the Bergers' action alleges that over a period of time their security instruments were exposed to unsafe financial conditions and to ultimate loss or risk of loss "that caused property loss or damage and loss of use of said . . . security instruments and/or the property in which the said funds were invested." More particularly, the Bergers allege that they made substantial payments based on Martin's false representations, and, therefore, were deprived of their initial investment, profits, and other benefits. Nowhere in the Bergers' complaint do they seek recovery for damages to "tangible property." The Bergers do not claim that the parcels of land in Montgomery County, on which they had second mortgages, were physically damaged but, rather, that Martin failed on his promises to earn profits for them by repaying principal and interest on the money that they invested.
The Bergers rest their argument that their loss was a loss of "tangible" property upon the recent case of Perkins v. HartfordIns. Group, 932 F.2d 1392 (11th Cir. 1991). In Perkins, the dispute stemmed from a disagreement between Robert Perkins, the owner of a printing company, and Deena Watson, one of his former customers. Watson, an artist, hired Perkins in January 1988 to make prints of an original Mardi Gras poster that Watson had designed and painted; the prints were intended for sale in the Mobile area. Watson intended to produce and sell 200 hand-signed prints of her poster. In accordance with their agreement, Perkins made the 200 Mardi Gras prints and delivered them to Watson shortly before Mardi Gras in February 1988. After she began selling her prints, she learned that copies of her poster were being distributed without her consent. Watson later discovered that some of the copies of her poster that had been discarded into trash bins at Perkins's print shop had been removed and given away. When Watson learned of this, she sued Perkins.
Perkins had a "comprehensive general liability policy" from Hartford Insurance Company that included a "property damage" definition substantially similar to the "property damage" definitions contained in the policies at issue in this present case. Because the extra Mardi Gras prints could have been sold to anyone, and such sales would have resulted in a diminution of value of the signed prints, the court remanded the case upon a finding that Robert Perkins's acts "indicated" a negligent damage to tangible property that was "possibly" covered by Hartford's insurance policy. 932 F.2d at 1396.
To the extent that Perkins suggests that strictly economic losses could be losses to tangible property, we decline to follow it. Although the Bergers attempt to characterize their claims differently, the clear basis of their complaint is that they invested money with Martin and that they lost money on those investments. As indicated above, strictly economic losses like lost profits, loss of an anticipated benefit of a bargain, and loss of an investment, do not constitute damage or injury to "tangible" property.
The language used in each policy is based on the assumption that tangible property, unlike an economic interest, is generally subject to physical damage or destruction. We conclude that no coverage exists for the Bergers' claims of "property damage," because there was no damage to "tangible property" under the definitions within the policy, and such damage is necessary to bring such claims within the policy coverage. See Reliance Ins. Co. v. Gary C. Wyatt, Inc.,540 So.2d 688 (Ala. 1988); United States Fid. Guar. Co. v. WarwickDev. Co., 446 So.2d 1021 (Ala. 1984); Oxford Lumber Co. v.Lumbermen's Mut. Ins. Co., supra.
 Bodily Injury
We next address the question whether the assertions in the Bergers' complaint trigger the insurance policy coverage for "bodily injury," specifically for mental anguish. *Page 250 
The commercial general liability insurance policy issued by American States to Martin and his businesses defined "bodily injury" as:
 " 'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."
The scope of coverage for bodily injury was limited as follows:
 "b. This insurance applies to 'bodily injury' . . . only if:
". . . .
 "(2) The 'bodily injury' . . . occurs during the policy period."
(Emphasis added.)
The business owner's insurance policy issued by American States to Martin and his businesses defines "bodily injury" as follows:
 "Bodily injury means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom."
(Emphasis added.)
American States concedes that mental anguish is a "bodily injury" under the policy terms, but it argues that the Bergers' mental anguish is not covered because the Bergers did not experience mental anguish until after the policies issued to Martin and his associated businesses had been terminated. The Bergers argue that because all of the incidents that led to their mental anguish occurred during the policy periods, American States should provide coverage.
This Court has stated that "as a general rule the time of an 'occurrence' of an accident within the meaning of an indemnity policy is not the time the wrongful act is committed but the time the complaining party was actually damaged." United StatesFidelity Guaranty Co. v. Warwick Development Co.,446 So.2d 1021, 1021 (Ala. 1984). This Court recently reaffirmed that holding in State Farm Fire Cas. Co. v. Gwin, 658 So.2d 426
(Ala. 1995).
The facts in State Farm v. Gwin are as follows: In May 1991, Stephen Gwin and his wife Jan Gwin sold two parcels of real property to Michael Dobson and his wife Wanda Dobson. State Farm insured the dwellings on each of the parcels by providing coverage for "bodily injury, personal injury, or property damage . . . which occurs during the period this policy is in effect." On the date of closing of the sales, the Gwins' insurance on the properties ceased and their coverage was transferred to the duplex into which they moved following the sale. After the sale of the parcels, the Dobsons discovered that the dwelling on one of the parcels was, among other things, infested with termites. The Terminex pest control company had treated the property for termite damage while it was owned by the Gwins. The Dobsons sued the Gwins and Terminex, alleging fraud and misrepresentation, and they apparently sought damages for emotional distress. State Farm sued for a judgment declaring that it had no obligation to defend or indemnify the Gwins with regard to the lawsuit filed against them by the Dobsons. We held that, pursuant to the reasoning in Warwick, there was no coverage for the Dobsons' emotional distress, because "any emotional distress related to the alleged misrepresentations would have occurred after the termination of the policy." 658 So.2d 428 (emphasis in original).
The language of the American States policies at issue in this case clearly provide that an injury, and not an occurrence that causes injury, must fall within the policy period for it to be covered. The Bergers admit that any mental anguish they may have suffered would have been suffered after the two policies issued by American States had expired. We conclude that, because the Bergers' alleged suffering came after both American States policies had been terminated, there is no coverage for their "bodily injury" i.e., mental anguish, claims.
 Conclusion
We answer the first question in the negative. Because the lost investments are not "property damage" as defined by the policies, no coverage exists under the property damage provisions. Because we also conclude that no coverage exists under the "bodily injury" provisions, American States is not obligated to defend Martin or his businesses in the action by the Bergers. Because we *Page 251 
answer the first question in the negative, we find no need to address the second question, whether American States would have a duty to indemnify "if the wrongful conduct of Martin was innocent, reckless, negligent, or wanton rather than intentional."
QUESTION ANSWERED.
MADDOX, HOUSTON, KENNEDY, INGRAM, COOK, and BUTTS, JJ., concur.
[1] The Montgomery County lawsuit by the Bergers against Don Martin and his companies has been defended, pursuant to a reservation of rights letter, by attorneys engaged by American States.