RICHARD L. HOLMES, Retired Appellate Judge.
North American Specialty Insurance Company (North American) appeals from a summary judgment entered in favor of Universal Underwriters Insurance Company (Universal). This case is before this court pursuant to § 12-2-7(6), Ala.Code 1975.
Universal and North American are insurance companies that provided separate and successive indemnity coverage for Serra Chevrolet, an automobile dealership. Universal provided Serra with coverage from June 1, 1990, through September 1, 1991. North American provided Serra with coverage from September 1, 1991, through September 1,1992.
On August 31, 1990, Jane Kearfott Dickinson purchased a used 1989 Chevrolet S-10 truck from Serra. The salesmen at Serra were friends of Dickinson, and they represented to her that the truck had not been wrecked when, in fact, it had been “totalled.”
On August 28,1992, Dickinson filed a mul-ti-count complaint against Serra and others for the mental anguish that she experienced as a result of the fraudulent misrepresentation. Dickinson’s lawsuit was ultimately settled for $175,000; Universal and North American each contributed $87,500 toward the settlement, and each reserved the right to pursue a declaratory judgment action against the other if they could not satisfactorily resolve the matter of contribution.
On March 7, 1995, Universal filed a complaint against North American, seeking a declaratory judgment. Specifically, Universal requested the trial court to determine that it was entitled to recover its portion of the settlement proceeds from North American because, it said, Dickinson’s mental anguish occurred during North American’s coverage period. North American filed an answer and a counterclaim, wherein it claimed that Dickinson’s injuries occurred during Universal’s coverage period.
Thereafter, North American filed a summary judgment motion. Universal also filed a summary judgment motion, which included a request for attorney fees. On October 25, 1996, the trial court, following a hearing, issued an order, wherein it concluded that Dickinson’s mental anguish occurred during North American’s coverage period. Accordingly, the trial court granted Universal’s summary judgment motion and entered a judgement in favor of Universal in the amount of $87,500. The trial court denied Universal’s request for attorney fees.
North American appeals. Universal cross-appeals, contending that the trial court erred in denying its request for attorney fees.
At the outset we note that Rule 56(c), Ala.R.Civ.P., provides that a summary judgment is appropriate in situations where no genuine issue of any material fact exists and the movant is entitled to a judgment as a matter of law. It is well settled that the moving party has the burden of establishing that no genuine issue of a material fact exists and that all reasonable uncertainties regarding the existence of a genuine issue of a material fact must be resolved against the moving party. Porter v. Fisher, 636 So.2d 682 (Ala.Civ.App.1994).
Once the movant makes a prima facie ease showing that no genuine issue of a material fact exists, then the burden shifts to the nonmoving party to present substantial evidence regarding the existence of a genuine issue of a material fact. Porter, 636 So.2d 682.
Suffice it to say, we have carefully reviewed the record on appeal and deem it unnecessary to recite the pertinent language contained in the respective policies at issue. It is undisputed that the indemnity policies issued by Universal and North American provided coverage for the type of injury (mental anguish) that Dickinson suffered. As stated by the trial court in its order dated October 25, 1996, “the only factual dispute between UNIVERSAL and NORTH AMERICAN is the time when DICKINSON, under Alabama law, suffered legal injury which thereby triggered coverage under the respective insurance policies at issue.”
As stated previously, Dickinson purchased the truck on August 31, 1990. She testified in her deposition that four to five days after purchasing the truck, the wheels and the steering column began vibrating, which re *997 quired the purchase of new tires and several wheel alignments. Dickinson also testified that the left door did not open and close properly, the hood did not close properly, the left outside mirror fell off, the glove compartment door fell off, and the front-end tire rods were faulty. The record does not reflect the dates that Dickinson experienced these problems.
The record reflects that in March 1991, Dickinson’s boyfriend, who had experience in the automobile body repair business, told Dickinson that the truck had been repainted. Dickinson testified that as a result of that discussion, she had an “inkling” that the truck had been involved in a prior wreck. She further testified that she was “[m]ore suspicious than concerned.”
North American argues that Dickinson suffered mental anguish as early as March 1991, when she learned that the truck had been repainted. However, we note that Dickinson apparently did nothing at that time to confirm her suspicions. In fact, she never returned the truck to Serra for any of the problems she experienced.
In April or May 1992, over one year later, a load of fence posts fell on the side of the truck. Dickinson had the truck repaired in May 1992, and the body shop manager told her that the left side panel and the roof had been previously replaced.
At some point between May 1992 and August 1992, Dickinson actually hired a lawyer to investigate the situation. The lawyer confirmed that the truck had, in fact, been “to-talled” and conveyed this information to Dickinson. As stated previously, Dickinson filed her lawsuit against Serra on August 28, 1992.
The following testimony confirms that Dickinson did not suffer any mental anguish until she actually learned from her lawyer that the truck had, in fact, been totalled and that her friends at Serra had deceived her:
“Q. And then you later found out that actually the [truck] had been wrecked, didn’t you?
“A Yes.
“Q. And when was that? I will refresh your recollection if you want me to. You said that you knew for sure when the suit was filed.... [T]he question was, “When did you become aware of the fact that some of these defendants had made a misrepresentation to you?’ And you said, ‘For sure, when I filed suit’; is that right?
“A. Yes.
[[Image here]]
“Q. And that was after [your lawyer] got in the lawsuit and made investigations and found out it was true?
“A. Yes.
[[Image here]]
“Q. And then you found you had been betrayed by your friends out at Serra, didn’t you?
“A. Yes.
“Q. And it was then that you became— that you suffered what we call mental anguish?
“[Lawyer]: Objection
“Q. You were anguished about it?
“A. Yes.
“Q. You worried about it?
“A. Yes.
“Q. That your friends would do that to you?
“A. Yes.
[[Image here]]
“Q. That feeling, that mental anguish, that concern, that bewilderment, that worry occurred when [your lawyer] told you, “Young lady, this [truck] has been — was a total loss and they lied to you about it’?
“A. Yes.
[[Image here]]
“Q. I’m asking you, isn’t it a fact that that’s when you experienced anguish, when you found out that you had been betrayed?
“A Yes.”
Our supreme court has stated that “ ‘as a general rule the time of an “occurrence” of an accident within the meaning of an indemnity policy is not the time the wrongful act is committed but the time the complaining party was actually damaged.’ ” American States Ins. Co. v. Martin, 662 So.2d 245, 250 (Ala.1995) (quoting earlier cases).
*998 Dickinson’s testimony reveals that she did not actually suffer mental anguish until her lawyer told her that her Mends at Serra had lied to her about the truck. Although Dickinson had an “inkling” in March 1991, after learning that the truck had been repainted, she, nevertheless, did nothing to confirm her suspicions, such as returning the truck to Serra. Dickinson’s testimony further reveals that she suffered nothing more than mere frustration with the other problems that she experienced with the truck’s doors, hood, tires, mirrors, etc.
Based on the foregoing, we agree with the trial court’s following conclusion:
“DICKINSON’S mental anguish did not and could not have occurred until August 1992 [during the time when North American provided Serra with coverage] when she was definitively informed by her [lawyer], after investigation, that in fact her [truck] had been previously wrecked and that she had been deceived. It was at this time that DICKINSON factually determined that a fraud had been perpetrated.
Consequently, we conclude that the trial court properly entered the summary judgment in favor of Universal.
Universal, in its cross-appeal, contends that the trial court abused its discretion in denying its request for attorney fees, pursuant to the Alabama Litigation Accountability Act set out in Ala.Code 1975, § 12-19-272(a), which provides the following, in pertinent part:
“[T]he court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorneys’ fees and costs against any attorney or party, or both, who has brought a civil action, or asserted a claim therein, or interposed a defense, that a court determines to be without substantial justification, either in whole or part....”
Specifically, Universal contends that North American’s summary judgment motion, as well as its defense, was interposed without substantial justification and was, therefore, without merit. In determining whether to assess attorney fees and costs, the trial court shall consider, but is not limited to, numerous factors which are set forth in § 12-19-273, Ala.Code 1975. The trial court, in this instance, did not make any specific findings of fact regarding the reasons it denied Universal’s request for attorney fees. After carefully reviewing the record, however, we conclude that North American’s summary judgment motion, as well as its defense, was justified since both insurance companies reserved the right to pursue a declaratory judgment action against the other in the event of a dispute.
In light of the foregoing, we find no abuse of discretion by the trial court in denying Universal’s request for attorney fees.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
ROBERTSON, P.J., and YATES, CRAWLEY, and THOMPSON, JJ., concur.
MONROE, J., recused.